**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
PATRICK S. BRADY,

                Plaintiff,

        - against -

WAL-MART STORES, INC.,
YEM HUNG CHIN, and
JAMES BOWEN,

                Defendants.
-------------------------------------------------------X

**MEMORANDUM AND ORDER**

CV 03-3843 (JO)

**JAMES ORENSTEIN, Magistrate Judge:**

      For the reasons set forth below, based upon the jury's verdicts, I direct the clerk to enter judgment in favor of plaintiff Patrick S. Brady ("Brady") jointly and severally against defendants Wal-Mart Stores, Inc. ("Wal-Mart") and Yem Hung Chin ("Chin") in the amount of $2,500,000 and against defendant Wal-Mart alone in the additional amount of $300,002. The portion of the judgment against Wal-Mart alone reflects a total award of punitive damages of $300,000 on all of Brady's proven claims against the company based on the statutory cap of such damages in a single action, as well as nominal damages of one dollar on each of two technical violations of the Americans with Disabilities Act ("ADA"), 29 U.S.C. § 12101, *et seq*., alleged in Brady's complaint. The judgment does not include any award of back pay or front pay. Finally, based on the jury's verdicts, I direct the clerk to dismiss with prejudice Brady's claims against defendant James Bowen ("Bowen").

I.      Background

      In his amended complaint, docket entry ("DE") 33, Brady asserted several claims against Wal-Mart, Chin, and Bowen based on his experiences in applying for and then having a job as a part-time sales associate at the Wal-Mart store in Centereach, New York, in the summer of 2002.

Briefly stated, Brady, who suffers from cerebral palsy, claimed that Wal-Mart violated the ADA during the job application process by making certain prohibited inquiries before extending a conditional offer of employment, and then, after he was hired, further violated the ADA, as well as the New York Human Rights Law ("NYHRL"), N.Y Exec. L. § 296, by subjecting him to adverse employment actions – including subjecting him to unwanted transfers, a hostile work environment, and constructive discharge – on the basis of a disability and by failing to provide a reasonable accommodation for his disability. Brady also accused two Wal-Mart employees – pharmacist Chin and store manager Bowen – of having participated in the conduct giving rise to his claim of disability discrimination. Brady further claimed that the defendants' actions intentionally inflicted emotional distress upon him, and also complained of Wal-Mart's alleged negligence in hiring, supervising, and retaining employees. DE 33. By Order dated February 16, 2005, the Honorable Leonard D. Wexler, United States District Judge, granted in part and denied in part the defendants' motions for summary judgment: Brady's claims alleging negligent hiring, supervision, and retention were dismissed, and the remaining claims alleging violations of the ADA and NYHRL and intentional infliction of emotional distress were permitted to proceed to trial. DE 76.

Judge Wexler selected a jury on February 14, 2005. DE 66. All of the parties subsequently consented to the referral of this case to a magistrate judge for all purposes including the entry of judgment pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. DE 67. I then presided over the jury trial, which began on February 16, 2005, and concluded when the jury returned its verdicts on February 23, 2005.

The jury found in favor of Brady on several of his causes of action and in favor of the defendants on others. Specifically, on the main charge of disability discrimination, the jury found that Brady proved that he was disabled within the meaning of the ADA (the defendants stipulated that he was disabled within the meaning of the state law), and that Wal-Mart subjected him to two adverse employment actions on the basis of his disability: transferring Brady from the pharmacy department to a position pushing carts in the parking lot, and creating a hostile work environment. The jury did not find that Brady had proved two other adverse employment actions: a transfer from the parking lot to a position in the food department, and constructive discharge. The jury found that Chin participated in the discrimination but did not find the same with respect to Bowen. The jury further found that Wal-Mart had a duty to offer Brady a reasonable accommodation for his disability but failed to do so, but rejected Brady's claim that any of the defendants intentionally inflicted emotional distress.

On Brady's claims relating to the job application process, the jury found that Wal-Mart did not violate the ADA with respect to inquiries about prescription medications, but found that the company did violate the ADA by including a prohibited inquiry in its job description form. The latter verdict was entered at my direction: based on my legal rulings made over Wal-Mart's objections, the parties agreed that the record required the jury to find the violation with respect to the job description form.

The jury awarded Brady $9,114 in economic damages based on his loss of back pay, $2.5 million in compensatory damages based on the emotional trauma to which Brady attested, and nominal damages of one dollar apiece on his reasonable accommodation and job application process claims. The jury also awarded Brady punitive damages on each claim that it found he

had proved. Specifically, it awarded $4.5 million on the claim of disability discrimination based on adverse employment actions, $250,000 on the claim of failure to provide a reasonable accommodation, and $250,000 on the claim of a prohibited inquiry in the application process. To guard against overlapping awards, I asked the jury to specify the total amount of punitive damages is wished to award; the response was a total of $5 million. I did not solicit a verdict from the jury with respect to the equitable relief of front pay.

Both sides now seek to have me enter a judgment that differs in some respects from the jury's verdicts on damages. With respect to the largest part of the awards, the parties agree that the relevant statutes forbid the full award of $5 million that the jury unanimously decided was a proper punishment for Wal-Mart's proven misconduct. They differ, however, as to how the award should be reduced. Wal-Mart contends that I can award no more than a single payment of $300,000 for all of the proven claims. DE 103. Brady argues that there are two distinct claims that can be the subject of separate awards: while he agrees that the awards on the adverse employment action and failure-to-accommodate claims must be merged into a single award of $300,000 in punitive damages, he asserts that the award of $250,000 for the prohibited job application inquiry was a separate violation of the ADA and may therefore form the basis of a separate award. He therefore seeks a total of $550,000 in punitive damages. DE 101. With respect to back pay and front pay, the defendants assert that neither is appropriate. DE 103 at 4-9. Brady disagrees, and requests an evidentiary hearing to determine the amount of front pay that should be awarded. DE 101 at 4-5.

II.  Discussion

   A.  Compensatory and Punitive Damages

      1.  Damages Under Federal and State Law

The applicable provisions of federal law allow a successful plaintiff such as Brady to recover both compensatory and punitive damages, but limits such recovery to $300,000 for each complaining party where, as here, the defendant had more than 500 employees during the relevant time period.  42 U.S.C. § 1981a(b)(3)(D); *see* DE 103 at 2.  New York's law does not permit any recovery of punitive damages in such cases, but places no limitation on the amount of compensatory damages a successful plaintiff may recover.  N.Y. Exec. Law § 297(9); *see Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 235 (2d Cir. 2000) (citing *Thoreson v. Penthouse Int'l, Ltd.*, 80 N.Y.2d 490 (1992)); *Greenway v. Buffalo Hilton Hotel*, 951 F.Supp. 1039, 1057 (W.D.N.Y. 1997), *aff'd in part*, 143 F.3d 47 (2d Cir. 1998).

      2.  Punitive Damages – The Federal Statutory Cap

Because applicable state law does not provide for punitive damages at all, Brady may recover the punitive damages awarded by the jury only to the extent consistent with 42 U.S.C. § 1981a.  Several courts have held that the § 1981a damages cap applies in the aggregate to all of a plaintiff's claims.  For example, after a jury in the Western District of New York awarded an ADA plaintiff compensatory damages in the amount of $420,300 on plaintiff's claims of discrimination and retaliation, the court reduced the award to $300,000 on the ground that the plain meaning of the text of § 1981a required that result.  *Muller v. Costello*, 997 F.Supp. 299, 303 (W.D.N.Y. 1998), *aff'd*, 187 F.3d 298 (2d Cir. 1999); *see also Hudson v. Reno*, 130 F.3d 1193 (6th Cir. 1997); *Fogg v. Ashcroft*, 254 F.3d 103 (D.C. Cir. 2001) (citations

omitted); *Baty v. Williamette Indus., Inc.*, 172 F.3d 1232 (10th Cir. 1999), *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116-117 (2002).

Brady seeks to distinguish such case law on the basis of three decisions: *Robertson Oil Company, Inc. v. Phillips Petroleum Co.*, 871 F.2d 1368,1376 (8th Cir. 1989); *Mason v. Oklahoma Turnpike Authority*, 115 F.3d 1442, 1459-60 (10th Cir. 1997); and *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1152 (10th Cir. 1999). However, as Brady concedes, all three of the cited cases arose in "other contexts," DE 101 at 4, and I find that none of the opinions overcomes the reasoning of cases such as *Muller* or allows a court to disregard the clear meaning of the federal statute. The underlying theme in the cited cases is that separate awards of punitive damages are appropriate where a plaintiff asserts separate claims that require varying standards of proof. But in this case, unlike those Brady cites, the only law permitting the plaintiff to recover the jury's award of punitive damages is the ADA. In particular, the jury did not find in Brady's favor or award him punitive damages on his claim of intentional infliction of emotional distress. In such circumstances, the plain meaning of § 1981a requires that Brady be awarded one aggregate punitive damages award of $300,000.

The preceding ruling respects the law, but it does not achieve a just result. That conclusion is not intended as a quarrel with the federal statute's limit on compensatory damages – the latter is a policy matter as to which I claim no competence, and Brady has in any event been awarded a large compensatory amount under state law, the propriety of which is not now before me. Nor do I intend either a policy criticism of the one-award-per-action rule that Congress has written into the law or an interpretive disagreement with the courts that have discerned the rule in the statute. Rather, my concern is that the law creates a regime in which smaller businesses are

subject to effective punishment for violating anti-discrimination laws but corporate behemoths such as Wal-Mart are not.

The statute calibrates its caps on punitive damages to reflect the size of the employer whose misconduct is to be punished – a scheme that would appear designed to assure that the civil punishment imposed on a corporate offender is meaningful but not fatal. The smallest employers who are subject to the anti-discrimination law – those with between 15 and 100 employees – may be forced to pay no more than $50,000 in punitive damages. 42 U.S.C. § 1981a(b)(3)(A). The next largest employers, with between 100 and 200 employees, are subject to a maximum of $100,000, and larger companies with up to 500 employees face a statutory damages cap of $200,000. *Id*. § 1981a(b)(3)(B)-(C). But the statutory scheme goes only so far: once a company grows beyond 500 employees, the law fixes the maximum amount of punitive damages at $300,000, regardless of whether the company barely meets the minimum requirement or, as here, is a "commercial titan" recognized as the "world's largest retailer." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 101 (2d Cir.), *cert. denied*, 125 S. Ct. 2277 (2005); *see* 42 U.S.C. § 1981a(b)(3)(D).

The smallest employers covered by the statute can truly feel the pinch of punitive damages even though they are capped for such a company at $50,000. By contrast, the record shows that, with total net sales of $256 billion in 2004, *see* Transcript of Trial ("Tr.") 828, it took Wal-Mart only 37 seconds last year to achieve sales equal to the $300,000 it must now pay Brady in punitive damages. There is no meaningful sense in which such an award can be considered punishment. In essence then, most companies can be punished if they intentionally discriminate

on the basis of disability (or race, or sex, or other invidious considerations), but the biggest companies that do so are effectively beyond the law's reach.

That Wal-Mart perceives such effective immunity from the civil punishment scheme is to some extent supported by the facts proved at trial. Despite entering into a consent decree to settle previous complaints of ADA violations, Wal-Mart asked Brady the same type of prohibited questions it had previously agreed to abandon, and its employees were entirely ignorant of the anti-discrimination policies that Wal-Mart had previously agreed to disseminate. Moreover, Wal-Mart's witnesses virtually to a person displayed a surprising inability or unwillingness to acknowledge Brady's disability, which was apparent to all others. Observing the testimony, I frankly found several of Wal-Mart's witnesses to be wholly incredible in attesting to ignorance of Brady's disability. The most generous conclusion I could draw from the testimony in this case – and the conclusion I did draw – was that the Wal-Mart employees who testified are well-intentioned people whom the company willfully failed to provide with sufficient training to abide by the anti-discrimination law.

The result was that Brady was subjected to the kind of discrimination against the disabled that both the law and the prior consent decree were designed to prevent. Brady will receive adequate compensation for that discrimination. But in the absence of the effective punitive sanctions that are available against smaller companies, it appears unlikely that the award in this case can suffice to restrain Wal-Mart from inflicting similar abuses on those who may be doomed to follow in Brady's footsteps.

Federal law permits an award of punitive damages of no more than $300,000 in this case, notwithstanding an impartial jury's considered view of how to impose a punishment that would

be just under all of the circumstances, and notwithstanding the inescapable reality that such an award inflicts no meaningful punishment on Wal-Mart at all. I must therefore reduce the jury's award of $5 million in punitive damages to $300,000.

### 3. Compensatory Damages

The parties appear to agree that the jury's award of $2.5 million in compensatory damages should be allocated entirely to Brady's state law claim (thereby avoiding further reduction of the $300,000 award on the federal claim). *See* DE 101 at 1, n.1; DE 103 at 2, n.2. The ADA explicitly preserves Brady's right to recover damages under state law not available under federal law, *see* 42 U.S.C. § 12201(b), and, as noted above, the applicable state law places no limit on the amount of compensatory damages that Brady may recover. *Greenway*, 951 F. Supp. at 1057. Other courts, in this district and elsewhere, have acted similarly to allocate jury awards between statutorily capped federal claims and unlimited state claims so as to most nearly reflect the jurors' verdicts. *See Luciano v. Olsten Corp.*, 912 F.Supp. 663, 675-76 (E.D.N.Y.) (Spatt, J.), *aff'd*, 110 F.3d 210 (2d Cir. 1997); *Gagliardo v. Connaught Lab., Inc.*, 311 F.3d 565, 570-71 (3d Cir. 2002); *Passantino v. Johnson & Johnson*, 212 F.3d 493 (9th Cir. 2000); *Martini v. Fed. Nat'l Mortgage Ass'n*, 178 F.3d 1336 (D.C. Cir. 1999); *but see Oliver v. Cole Gift Centers, Inc.*, 85 F. Supp. 2d 109, 113-14 (D. Conn. 2000) (citing cases where allocation found inappropriate where capped award under federal law adequately compensated plaintiff or permitted greater recovery than allowed by state law). Given the weight of authority and the lack of dispute on the matter, I allocation all of the jury's $2.5 million compensatory damages award – an award that the jury was instructed must compensate Brady for actual losses, and could not serve as a form of punishment – to Brady's state law claim.

B.  Back Pay

An award of back pay (like an award of front pay, which I address below) is a remedy designed to make whole a plaintiff who has succeeded in proving employment discrimination. *See Townsend v. Exch. Ins. Co.*, 196 F. Supp.2d 300, 306 (W.D.N.Y. 2002). As noted above, the jury found that Wal-Mart, for discriminatory reasons, subjected Brady to two forms of adverse employment actions (the transfer to the parking lot and the creation of a hostile work environment), but the jury also found that Brady failed to prove that he was constructively discharged. An award of back pay therefore does nothing to make Brady whole for actual losses caused by proven violations of the law, and there is thus no basis for such an award in this case.

A constructive discharge "occurs when the employer 'deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation.'" *Less v. Nestle Co., Inc.*, 705 F.Supp. 110, 114 (W.D.N.Y. 1988) (citations omitted). A plaintiff who voluntarily resigns and is not subjected to constructive discharge generally cannot recover back pay. This constructive discharge rule provides incentive both for the employee, who should assail the discrimination while remaining employed, and for the employer, who should have an opportunity to remedy the discrimination. *Nobler v. Beth Israel Med. Ctr.*, 715 F. Supp. 570, 571-72 (S.D.N.Y. 1989); *see also Townsend*, 196 F. Supp.2d at 308-310 (discussing various constructive discharge cases). Although the Second Circuit has not yet addressed this rule, it has been applied in other circuits. *See, e.g., Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7 (1st Cir. 2002); *Hertzberg v. SRAM Corp.*, 261 F.3d 651 (7th Cir. 2001); *Caviness v. Nucor-Yamato Steel Co.*, 105 F.3d 1216 (8th Cir. 1997); *Mallison-Montague v. Pocrnick*, 224 F.3d 1224 (10th

Cir. 2000). Based on this case law and the jury's verdicts in this case, the defendants' application to strike the jury's award of back pay is granted.

    C.    <u>Front Pay</u>

Brady seeks an additional award of front pay to compensate him for what he claims is "ongoing economic loss" resulting from the defendants' discrimination. DE 101 at 5. Brady does not seek a specific amount, but asks to convene an evidentiary hearing, at which he would proffer the expert testimony of Professor Mark Killingsworth. In a report submitted prior to trial, DE 65 Ex. I, Prof. Killingsworth described several scenarios for Brady's future career, with and without the discrimination complained of here, to attempt to quantify that continuing economic harm. Starting from the premise that Brady was "terminated by Wal-Mart in August 2002," *id*., Prof. Killingsworth projects that Brady's future losses are anywhere from $222,657 to $401,044. *Id*. Because Brady failed to prove his constructive discharge claim, and even more importantly because I have greater faith in Brady's abilities than his expert's analysis takes into account, I decline to award front pay.

The defendants contend that the constructive discharge rule discussed above with respect to back pay also applies to awards of front pay. DE 103 at 4-5; *see Townsend*, 196 F. Supp.2d at 311 (noting, but not addressing, this argument). Here again, the Second Circuit has not yet addressed the matter, but other circuits have done so, and their decisions support the defendants' argument. *See Hertzberg*, 261 F.3d 651; *Pocrnick*, 224 F.3d 1224. In this regard, I find the explicit assumption in Prof. Killingsworth's expert report illuminating: in making his projection, he took it as given that Brady was "terminated by Wal-Mart in August 2002." But the jury has since found otherwise. Whatever Brady's subjective reasons for leaving Wal-Mart were, he has

not proved that Wal-Mart objectively forced him to resign.  It would therefore be inequitable to require Wal-Mart to compensate him for any loss arising from his voluntary decision to leave the company rather than challenging its discriminatory practices while remaining employed there.

Moreover, an award of front pay under the ADA, as under Title VII, is discretionary. *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1182 (2d Cir. 1996) (Title VII case) (citing *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993)); *Hine v. Mineta*, 238 F. Supp.2d 497, 501 (E.D.N.Y. 2003) (Title VII case); *Greenway*, 951 F. Supp. at 1064 (ADA case).  Even without resort to the constructive discharge rule, I would decline to make a discretionary award of front pay under the circumstances of this case.

Front pay provides a remedy in those situations where reinstatement is inappropriate and a plaintiff has been unable to find another job, and where the fact-finder can reasonably predict that a plaintiff has no reasonable prospect of obtaining comparable alternative employment. *Reed*, 95 F.3d at 1182 (citations omitted).  Stated differently, front pay "represents compensation for future losses that the plaintiff would not suffer but for the discriminatory acts of the defendant.'" *Hine*, 238 F. Supp.2d at 501 (citing *Rivera v. Baccarat, Inc.*, 34 F.Supp.2d 870, 877 (S.D.N.Y. 1999)).  A plaintiff has "the duty to exercise reasonable diligence in mitigating damages by seeking alternative employment." *Id*. (citations omitted).  Further, the alternative employment need not be identical to plaintiff's job duties or remuneration at his prior position. *Hill v. Airborne Freight Corp.*, 2003 WL 366641, *5 (E.D.N.Y. Feb. 20, 2003) (citations omitted).  Front pay should not be awarded if the calculation method is unduly speculative. *Hine*, 238 F. Supp.2d at 501 (citations omitted); *Hill*, 2003 WL 366641 at *5 (citations omitted).

Furthermore, courts should review a plaintiff's entire award to determine whether a front pay award is appropriate. *Hill*, 2003 WL 366641 at *5 (citations omitted).

Applying these principles to the facts of the case makes an award of front pay inappropriate. Brady earned $7.25 per hour during his brief stint at Wal-Mart in the summer of 2002. Tr. 185. In June 2003, Brady started work at Stop and Shop bagging groceries and stocking shelves, eventually earning $6.25 per hour. Tr. 248-49. Brady found alternative employment – albeit at a lesser wage – and mitigated his damages. Moreover, Brady graduated from college in January 2005; during the trial, he said that he would soon start searching for full-time employment. Tr. 251-52. I have little doubt that the ambitious and thoughtful young man who testified with such poise at trial will succeed in making a career for himself. At this early stage of his life, any award of front pay would reflect an unwarranted pessimism about what Patrick Brady can and, I suspect, will accomplish. It would therefore be unduly speculative.

Finally, in the context of the entire award that Brady is entitled to recover, no award of front pay, however speculative, is needed to ensure that he receives fair compensation for Wal-Mart's discriminatory conduct. The jury's award of compensatory and punitive damages provides sufficient redress. I recognize that the parties may yet seek further adjustments to Brady's overall recovery – the defendants may seek to challenge the compensatory damages award as unreasonably high, and Brady may seek reasonable costs including attorneys' fees pursuant to 42 U.S.C. § 12205 – but as the award now stands, I cannot say that an additional award is needed to achieve a fair remedy. I therefore deny Brady's application for front pay.

III.	Conclusion

For the reasons set forth above, the jury's award of punitive damages award is reduced to one aggregate sum of $300,000; the jury's award of compensatory damages is allocated in its entirety to Brady's successful discrimination claim under New York state law; the defendants' application to strike the jury's award of back pay is granted; and Brady's application for an award of front pay is denied. The Clerk of the Court shall enter judgment as follows:

IT IS ORDERED:

that plaintiff Patrick S. Brady recover from defendants Wal-Mart Stores, Inc. and Yem Hung Chin the amount of $2,500,000 in compensatory damages;

that plaintiff Patrick S. Brady recover from defendant Wal-Mart Stores, Inc. the amount of $300,000 in punitive damages;

that plaintiff Patrick S. Brady recover from defendant Wal-Mart Stores, Inc. the amount of $2 in nominal damages;

that the jury's award of $9,114 in economic damages is stricken;

that plaintiff Patrick S. Brady's application for an award of front pay is denied; and

that all of the claims against defendant James Bowen are dismissed with prejudice.

**SO ORDERED.**

Dated: Central Islip, New York  	/s/ James Orenstein
       June 21, 2005          	JAMES ORENSTEIN
                              	U.S. Magistrate Judge