**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
PATRICK S. BRADY,                                              :
                                                              :   CV-03-3843
                                        Plaintiff,            :   (U.S.M.J. J. Orenstein presiding)
                                                              :
        -against-                                             :
                                                              :
                                                              :
WAL-MART STORES, INC., YEM HUNG                               :
CHIN, and JAMES BOWEN,                                        :
                                                              :
                                        Defendants.   :
-------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
# PLAINTIFF'S MOTION FOR ATTORNEYS' FEES,
# COSTS AND PRE- AND POST-JUDGMENT INTEREST


June 27, 2005                          **THOMPSON WIGDOR & GILLY LLP**
                                       Empire State Building
                                       350 Fifth Avenue, Suite 5720
                                       New York, New York 10118-0110
                                       Tel.: (212) 239-9292
                                       Fax: (212) 239-9001

                                       Counsel for Plaintiff

## TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS…………………………………………………………..i

TABLE OF AUTHORITIES………………………………………………….iii

PRELIMINARY STATEMENT………………………………………………1

STATEMENT OF FACTS………………………………………………..4

ARGUMENT…………………………………………………………...4

I.     PLAINTIFF IS THE PREVAILING PARTY IN THIS ACTION AND IS
       THEREFORE ENTITLED TO AN AWARD OF REASONABLE
       ATTORNEYS' FEES AND COSTS……………………………………..4

       A.     The Amount Of Fees Plaintiff Seeks Are Reasonable Under The
              Lodestar Method For Calculating Fees……………………………6

              1.     The Hourly Rates Used Are Reasonable…………………..6

              2.     The Hours Claimed Are Reasonable And Recorded……….10

       B.     Plaintiff's Fee Should Be Adjusted Upward Based On The *Hensley*
              Factors……………………………………………………………11

              1.     Plaintiff's Unprecedented Success……………………….12

              2.     Plaintiff Obtained An Overall Successful Result In This
                     Action………………………………………………..13

              3.     Time And Labor Required………………………………16

              4.     Novelty And Difficulty Of Question Presented……………18

              5.     Skill Required To Perform Legal Service Properly……….19

              6.     Preclusion Of Other Employment………………………19

              7.     Experience, Reputation And Ability Of Attorneys……….19

              8.     Contingency Fee Arrangement………………………….20

              9.     Undesirability Of Case………………………………...20

10.     Awards In Similar Cases……………………………………………21

II.     ATTORNEYS' FEES INCURRED IN MAKING THIS MOTION AND
        TAXABLE DISCRETIONARY COSTS SHOULD ALSO BE AWARDED…..23

        A.      "Fees On Fees"……………………………………………………..23

        B.      Costs Should Be Awarded……………………………………………23

III.    PRE- AND POST-JUDGMENT INTEREST SHOULD BE AWARDED……...24

CONCLUSION……………………………………………………………………..26

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

Algie v. RCA Global Communications, Inc.,
  891 F.Supp. 894 (S.D.N.Y. 1994)……………………………………………11

Berlinsky v. Alcatel Alsthom Compagnie,
  970 F.Supp. 348 (S.D.N.Y. 1997)…………………………………………..8, 22

Bianco v. Erkins,
  284 B.R. 349 (S.D.N.Y. 2002)…………………………………………...7, 21

Blanchard v. Bergeron,
  489 U.S. 87 (1989)………………………………………………………..6, 20

Blissett v. Casey,
  969 F.Supp. 118 (N.D.N.Y. 1997)………………………………………….13

Blum v. Stenson,
  465 U.S. 886 (1984)…………………………………………………………7

Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.,
  190 F.Supp.2d 407 (E.D.N.Y. 2002), rev'd sub nom on other grounds,
  Empire Healthchoice, Inc. v. Philip Morris, Inc.,
  393 F.3d 312 (2d Cir. 2004)………………………………………………...8, 21

BNP-Dresdner Bank Zao v. Haque,
  No. 98 Civ. 1109 (JCK), 1998 WL 831353 at *5 (S.D.N.Y. Nov. 30, 1998) ...8, 22

Bonner v. Guccione,
  No. 94 Civ. 7735 (DLC), 1997 WL 441910 at *7 (S.D.N.Y. Aug. 6, 1997)……...9

Davis v. City of New Rochelle, N.Y.,
  156 F.R.D. 549 (S.D.N.Y. 1994)…………………………………………...23

Farrar v. Hobby,
  506 U.S. 103 (1992)…………………………………………………………5

Gagne v. Maher,
  594 F.2d 336 (2d Cir. 1979)………………………………………………..23

Gonzalez v. Bratton,
  147 F.Supp.2d 180 (S.D.N.Y. 2001)……………………………………….17

Grant v. Martinez,
   973 F.2d 96 (2d Cir.1992)………………………………………………………7

Gusman v. Unisys Corp.,
   986 F.2d 1146 (7th Cir. 1993)………………………………………………..9

Greenway v. Buffalo Hilton Hotel,
   143 F.3d 47 (2d Cir. 1998)………………………………………………….25

Gilbert v. Hotline Delivery,
   2001 WL 799576 (S.D.N.Y. 2001)………………………………………….25

Hensley v. Eckerhart,
   461 U.S. 424 (1983)……………………………………...3, 6, 7, 10, 11, 12, 13, 14

In re Agent Orange Prod. Liab. Litig.,
   611 F.Supp. 1296 (E.D.N.Y. 1985)………………………………………...17

Kuper v. Empire Blue Cross & Blue Shield,
   2003 WL 23350111 at *2 (S.D.N.Y. 2003)……………………………6, 8, 21, 25

LeBlanc-Sternberg v. Fletcher,
   143 F.3d 748 (2nd Cir. 1998)………………………………………………..14

Lenihan v. City of New York,
   640 F.Supp. 822 (S.D.N.Y. 1986)…………………………………………..20

Marfia v. T.C. Ziraat Bankasi,
   903 F.Supp. 463 (S.D.N.Y. 1995)…………………………………………...8

Merriwether v. Coughlin,
   727 F.Supp. 823 (S.D.N.Y. 1989)…………………………………………..10

Nat'l Helicopter Corp. v. City of New York,
   No. 96 Civ. 3574 (SS), 1999 WL 562031 (S.D.N.Y. July 30, 1999)……………..9

New Leadership Comm. v. Davidson,
   23 F.Supp.2d 301 (E.D.N.Y. 1998)……………………………………….....22

N.Y.S. Teamsters Conf. Pension & Ret. Fund v. United Parcel Serv., Inc.,
   No. 98 Civ. 1902, 2004 WL 437474 (N.D.N.Y. February 27, 2004)…………10

N.Y. State NOW v. Pataki,
   No. 93 Civ. 7146 (RLC), 2003 WL 2006608 (S.D.N.Y. April 30, 2003)…….8, 21

Orchano v. Advanced Recovery, Inc.,
   107 F.3d 94 (2nd Cir. 1997).................................................................12

Pascuiti v. N.Y. Yankees,
   108 F.Supp.2d 258 (S.D.N.Y. 2000)....................................................23

Peacock v. Schwartz,
   154 F.Supp.2d 428 (E.D.N.Y. 2001)..........................................12, 13, 15

People Who Care v. Rockford Bd. Of Educ.,
   90 F.3d 1307 (7th Cir. 1996)................................................................9

Perdue v. City Univ. of New York,
   13 F.Supp.2d 326 (E.D.N.Y. 1998).....................................................24

Pierce v. Underwood,
   487 U.S. 552 (1988)..........................................................................12

Pinner v. Budget Mortgage Bankers, LTD,
   336 F.Supp.2d 217 (E.D.N.Y. 2004)...................................................15

Raishevic v. Foster,
   247 F.3d 337 (2nd Cir. 2001)..............................................................4

Reed v. A.W. Lawrence & Co., Inc.,
   95 F.3d 1170 (2nd Cir. 1996)........................................................13, 14

Reichman v. Bonsignore, Brignati & Mazzotta P.C.,
   818 F.2d 278 (2d Cir. 1987)..............................................................24

Reiter v. Metro. Transp. Auth. of N.Y.,
   224 F.R.D. 157 (S.D.N.Y. 2004).........................................................6

Robinson v. Instructional Sys., Inc.,
   80 F.Supp.2d 203 (S.D.N.Y.2000)...................................................6, 24

Rodriguez ex rel. Kelly v. McLoughlin,
   84 F.Supp.2d. 417 (S.D.N.Y. 1999)..................................................8, 21

Seigal v. Merrick,
   619 F.2d 160 (2nd Cir. 1980)............................................................13

Skold v. Am. Int'l Group,
   No. 96 Civ. 7137 (HB), 1999 WL 405539 (S.D.N.Y. June 18, 1999)............8, 21

<u>Tokyo Electron Ariz., Inc. v. Discreet Indus. Corp.</u>,
    215 F.R.D. 60 (E.D.N.Y. 2003)……………………………………………22

<u>Ursa Minor Ltd. v. Aon Fin. Prods., Inc.</u>,
    No. 00 Civ. 2474 (AGS), 2001 WL 1842042 (S.D.N.Y. May 30, 2001)……..7, 21

<u>U.S. v. Tate & Lyle N. Am. Sugars, Inc.</u>,
    90 A.F.T.R.2d 2002-6485 (S.D.N.Y. 2002)…………………………………..25

**STATUTES**

Fed.R.Civ.P. 54……………………………………………………………………1

Fed.R.Civ.P. 59(e)……………………………………………………………1, 2, 4, 24

N.Y. Exec. L. § 290………………………………………………………...6, 15

28 U.S.C. § 1961(a)……………………………………………………………...1, 2, 25

29 U.S.C. § 12101…………………………………………………4, 6, 12, 13, 15, 18

42 U.S.C. § 1988……………………………………………………………………..1

42 U.S.C. § 1981a………………………………………………………………...20

42 U.S.C. § 2000e-5…………………………………………………………………4

42 U.S.C. § 2000e-5(k)……………………………………………………………...4

42 U.S.C. § 12117(a)…………………………………………………………………..4

42 U.S.C. § 12205…………………………………………………………………1, 4, 23

After the completion of sixteen months of discovery, including eighteen depositions,[1] this disability discrimination action was tried from February 14, 2005 to February 23, 2005 and resulted in a $7.5 million verdict. On June 21, 2005 the Court issued a Memorandum and Order and on June 23, 2005, a Judgment was entered in favor of Plaintiff in the total sum of $2,800,002. As the prevailing party, Plaintiff Patrick Brady ("Plaintiff") respectfully submits this Memorandum of Law in Support of his Motion for Attorneys' Fees, Costs and Pre- and Post-Judgment Interest pursuant to 42 U.S.C. § 12205, 42 U.S.C. § 1988, 28 U.S.C. § 1961(a) and Federal Rules of Civil Procedure 54 and 59 ("Fed.R.Civ.P.") ("Plaintiff's motion"). For all of the reasons set forth below, and in the supporting papers submitted herewith, Plaintiff's motion should be granted.[2]

## PRELIMINARY STATEMENT

This memorandum of law and supporting papers are respectfully submitted on behalf of Plaintiff in support of his request that the Court order Defendants Wal-Mart Stores, Inc. ("Wal-Mart") and Yem Hung Chin ("Chin") (together, "Defendants")[3] to fully compensate Plaintiff's counsel, Thompson Wigdor & Gilly LLP ("TWG" or "Counsel"), for all of the reasonable time and costs expended in this action from its inception through trial as well as the submission of post-trial motions, including the present motion, at a current hourly rate that is comparable to that which is received by

---

[1] Not included in this number are Plaintiff's two separate appearances for his deposition -- totaling over 7 hours.

[2] Plaintiff respectfully requests permission to file an updated fee application and bill of costs after briefing Plaintiff's opposition to Defendants' anticipated Rule 50 and 59 motions and after filing a reply brief to this motion. The information herein is current through June 24, 2005.

[3] Defendant James Bowen ("Bowen") was also named in this action. However, because the jury determined he was not liable under any of Plaintiff's causes of action, Plaintiff does not seek an award of attorneys' fees or costs from Mr. Bowen.

lawyers of comparable skill, experience and reputation. Plaintiff's motion also seeks to amend the Judgment entered on June 23, 2005 to include attorneys' fees and costs as well as pre- and post-judgment interest, pursuant to 28 U.S.C. § 1961(a) and Fed.R.Civ.P. 59(e).

As demonstrated by the Declaration of Douglas H. Wigdor in Support of Plaintiff's Motion for Attorneys' Fees, Costs and Pre- and Post-Judgment Interest ("Wigdor Declaration" or "Wigdor Decl.") and the 57 pages of contemporaneous computerized billing records and other exhibits attached thereto, an enormous amount of time and labor was required to successfully pursue Plaintiff's claims against Wal-Mart, the world's largest retailer and the nation's largest employer.

Pursuant to the applicable lodestar method of calculating an award of attorneys' fees, Plaintiff's fee award is equal to the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate for each attorney providing the service. The reasonable hourly rates Counsel seeks here are justified as the customary hourly rates charged to other clients. In addition, as set forth in the Declarations of other respected attorneys in this district and the district of TWG's main office provided herewith, similar hourly rates are charged by other attorneys and the requested rates are not outside the norm.

Accordingly, Plaintiff requests that the Court award reasonable attorneys' fees based on the following calculation:

|  | Hourly rate | No. Hours | Sub-total |
|---|---|---|---|
| Douglas H. Wigdor (partner) | $450.00 | 849.40 | $382,230.00 |
| Scott B. Gilly (partner) | $450.00 | 152.90 | $68,805.00 |
| Kenneth P. Thompson (partner) | $450.00 | 3.60 | $1,620.00 |
| Michelle M. le Roux (associate) | $300.00 | 763.70 | $229,110.00 |
| Andrew S. Goodstadt (associate) | $350.00 | 40.10 | $14,035.00 |
| James C. Mallios (associate) | $325.00 | 8.70 | $2,827.50 |
| Jeffrey A. Dougherty (associate) | $265.00 | 186.30 | $49,369.50 |
| Key A. Mendes (associate) | $300.00 | 132.00 | $39,600.00 |
| Kathryn Webber (associate) | $350.00 | 0.80 | $280.00 |
| Jillian D. Howell (paralegal) | $100.00 | 163.10 | $16,310.00 |

Total: $804,187.00

Furthermore, the unprecedented verdict in this case for this district as well as the worldwide exposure of the case not only serves the remedial purpose of the anti-discrimination laws by encouraging other individuals to step forward to vindicate their civil rights but also justifies the fees requested and provides a basis for increasing that amount. The additional factors to be considered in such an application further justify an upward adjustment of the fee award. See Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983)(holding that an enhancement of fee award is justified in cases of exceptional success). Finally, Plaintiff is also entitled to the attorneys' fees reasonably incurred in making this motion, along with taxable and discretionary costs.

3

In addition, Plaintiff seeks to amend the judgment pursuant to Fed.R.Civ.P. 59(e) to include the attorneys' fees and costs as well as an amount of pre- and post-judgment interest.

## STATEMENT OF FACTS

The Court is respectfully referred to the Wigdor Declaration along with the exhibits attached thereto for a full recitation of the relevant facts and procedural history of this action.

## ARGUMENT

I. **PLAINTIFF IS THE PREVAILING PARTY IN THIS ACTION AND IS THEREFORE ENTITLED TO AN AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS**

Pursuant to the Americans with Disabilities Act (the "ADA"), the Court may award reasonable attorneys' fees and costs to the prevailing party in a civil rights action. The ADA provides that:

> in any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorneys' fee, including litigation expenses, and costs . . . .

See 42 U.S.C. §12205.[4]

Indeed, a presumption exists that successful civil rights litigants should ordinarily recover attorneys' fees. See Raishevic v. Foster, 247 F.3d 337, 344 (2nd Cir. 2001) (function of award of attorneys' fees is to encourage bringing of meritorious civil rights

---

[4] The ADA also statutorily incorporates the remedies available under 42 U.S.C. §2000e-5 for parties asserting their rights under the ADA. See 42 U.S.C. § 12117(a). 42 U.S.C. 2000e-5(k) provides that the prevailing party may recover "a reasonable attorneys' fee (including expert fees) as part of the costs."

claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel).

Here, this need to provide an incentive to attorneys to continue to prosecute such cases and hold employers accountable for their violations of the law was underscored by the Court's own recognition that Wal-Mart's vast resources gave it "effective immunity from the civil punishment scheme." Wigdor Decl. Ex. A. Moreover, the Court found unequivocally that, despite entering into a consent decree on a prior occasion undertaking various obligations, "Wal-Mart asked Brady the same type of prohibited questions it had previously agreed to abandon, and its employees were entirely ignorant of the anti-discrimination policies that Wal-Mart had previously agreed to disseminate." Id. In addition, "the company willfully failed to provide [its employees] with sufficient training to abide by the anti-discrimination law." Id. The Court also recognized that the reduced punitive damages award required here "appears unlikely . . . [to] suffice to restrain Wal-Mart from inflicting similar abuses on those who may be doomed to follow in Brady's footsteps." Id. It is therefore likely, while unfortunate, that similar discrimination will occur as a result of Wal-Mart's disregard for the law and competent counsel will continue to be required to bring such cases and enforce the laws that prohibit such conduct. It is in order to meet this laudable goal that fee-shifting is required so as to encourage such litigation and enforcement.

The Supreme Court has held that, to qualify as a prevailing party, a civil rights plaintiff must obtain an enforceable judgment against the defendants from whom fees are sought. Farrar v. Hobby, 506 U.S. 103, 111 (1992). Thus, the relief the plaintiff secures must directly benefit him at the time of the judgment. Id. In short, a party "prevails" in a

litigation when actual relief on the merits of his or her claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. Id. Accordingly, a jury verdict rendered in an employee's favor makes him a prevailing party entitled to recover attorneys' fees and costs. See Reiter v. Metro. Transp. Auth. of N.Y., 224 F.R.D. 157, 163 (S.D.N.Y. 2004) (in Title VII action a jury verdict rendered in employee's favor made him prevailing party entitled to attorneys' fees); Robinson v. Instructional Sys., Inc., 80 F.Supp.2d 203, 210 (S.D.N.Y.2000), aff'd in part and vacated in part on other grounds, 259 F.3d 91 (2d Cir.2001) (in Title VII action employee who obtained verdict in her favor and was awarded damages for her injuries was prevailing party).

By these standards, Plaintiff is the prevailing party in this litigation because the jury has rendered a verdict in his favor and judgment has been entered awarding him economic, compensatory, nominal and punitive damages based on his claims that Defendants Wal-Mart and Chin violated the ADA and the New York State Human Rights Law (the "NYSHRL"). Accordingly, he is entitled to an award of reasonable attorneys' fees and costs.

**A. The Amount Of Fees Plaintiff Seeks Are Reasonable Under The Lodestar Method For Calculating Fees**

**1.    The Hourly Rates Used Are Reasonable**

When presented with a fee application by the prevailing party, the Court must determine the reasonable amount of attorneys' fees to be awarded, using the lodestar method for calculating fees. See, Blanchard v. Bergeron, 489 U.S. 87, 94 (1989); Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983); Kuper v. Empire Blue Cross & Blue Shield, No. 99 Civ. 1190, 2003 WL 23350111 at *9 (S.D.N.Y. December 18, 2003).

The lodestar amount is the most useful starting point for determining the amount of a reasonable fee and calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the attorney or staff providing the service.  Hensley, 461 U.S. at 433; Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 97-98 (2nd Cir. 1997) (citing Hensley for method of calculating lodestar amount); Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.1992), cert. denied, 506 U.S. 1053 (1993) (under lodestar approach number of hours reasonably expended on the litigation is multiplied by reasonable hourly rate for attorneys and paraprofessionals).  The court maintains broad discretion in determining the reasonable amount of compensable time and the appropriate hourly rate.  See Hensley, 461 U.S. at 433.

To determine a reasonable hourly rate, the Court should look to the rates prevailing in the community for lawyers of comparable skill, experience and reputation. Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).  The Declarations of A. Kathleen Tomlinson and Frederick K. Brewington, provided herewith, justify the hourly rates sought by Plaintiff in this fee application and demonstrate that the requested hourly rates are not outside the norm in this district.

In addition, the small size of TWG is not determinative of the appropriate hourly rate.  Hourly rates in the same range as those requested here by Plaintiff have been awarded by the courts to attorneys working at firms of differing sizes.  See  Ursa Minor Ltd. v. Aon Fin. Prods., Inc., No. 00 Civ. 2474 (AGS), 2001 WL 1842042, at *7 (S.D.N.Y. May 30, 2001) (four years ago, under contractual fee-shifting provision, hourly rates of $450-550 for partners, $335 for senior associates and $285 for mid-level associates within normal New York City range); Bianco v. Erkins, 284 B.R. 349, 352

(S.D.N.Y. 2002) (three years ago, breach of contract, Paul Weiss partner's rate of $535-595 reasonable); <u>Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.</u>, 190 F.Supp.2d 407, 426 (E.D.N.Y. 2002) (three years ago, statutory fee-shifting, Dewey Ballantine partners' rate of $449-540 did not exceed norm for New York community) <u>rev'd sub nom on other grounds</u>, <u>Empire Healthchoice, Inc. v. Philip Morris, Inc.</u>, 393 F.3d 312 (2d Cir. 2004); <u>Kuper</u>, 2003 WL 23350111 at *9 (approving hourly rate of $420 an hour for an experienced attorney working at a two-attorney employment discrimination law firm); <u>N.Y. State NOW v. Pataki</u>, No. 93 Civ. 7146 (RLC), 2003 WL 2006608, at *2 (S.D.N.Y. April 30, 2003) (approving hourly rates of $430 and $400 an hour experienced small firm civil rights litigators); <u>Skold v. Am. Int'l Group</u>, No. 96 Civ. 7137 (HB), 1999 WL 405539 at *7 (S.D.N.Y. June 18, 1999), <u>aff'd</u>, 205 F.3d 1324 (2d Cir. 2000) (five years ago, awarding $400 for partner overseeing litigation); <u>Rodriguez ex rel. Kelly v. McLoughlin</u>, 84 F.Supp.2d. 417, 421 (S.D.N.Y. 1999) (six years ago, awarding $425 for partner on civil rights case); <u>BNP-Dresdner Bank Zao v. Haque</u>, No. 98 Civ. 1109 (JCK), 1998 WL 831353 at *5 (S.D.N.Y. Nov. 30, 1998) (seven years ago, awarding $400 for partner); <u>Berlinsky v. Alcatel Alsthom Compagnie</u>, 970 F.Supp. 348, 351 (S.D.N.Y. 1997) (eight years ago, awarding partner $495, associates $365-225).

Moreover, Plaintiff's attorneys have a nationally recognized plaintiffs' employment litigation practice meriting hourly rates commensurate with those of firms with established defense employment practices. This is so because "[i]t would be incongruous to limit plaintiffs' counsel in these cases to an hourly rate of $200 or less when defendants' counsel, in defending the same cases, are commanding rates of up to $400 an hour (or more) for partners." <u>Marfia v. T.C. Ziraat Bankasi</u>, 903 F.Supp. 463,

476 (S.D.N.Y. 1995), rev'd on other grounds, 100 F.3d 243 (2d Cir. 1996);  see also

Bonner v. Guccione, No. 94 Civ. 7735 (DLC), 1997 WL 441910 at *7 (S.D.N.Y. Aug. 6,

1997) vacated on other grounds, 178 F.3d 581 (2d Cir. 1999) (partner at Proskauer Rose

billed clients $400-425 per hour in a sexual harassment and discrimination case); Nat'l

Helicopter Corp. v. City of New York, No. 96 Civ. 3574 (SS), 1999 WL 562031

(S.D.N.Y. July 30, 1999) (plaintiffs represented by Dewey Ballantine LLP, traditionally a

defense firm, were entitled to partners' rates of up to $450). Here, in a December 9, 2004

article in the National Law Journal, Richard Raysman, Managing Partner of the New

York office of Brown Raysman, Defendants' counsel, confirmed that Brown Raysman's

"high-end" partner rate was $600 per hour.  Wigdor Decl. Ex. G.  Brown Raysman's lead

counsel in this case is Joel L. Finger who, according to his biography, "is one of the most

experienced and well-respected attorneys in his field today" and it is therefore likely that

his hourly rate is within this range.  Wigdor Decl. Ex. F.  Moreover, a survey of billing

rates published by the National Law Journal on December 6, 2004 revealed that

Associate billing rates at Brown Raysman range from $190 per hour to $400 per hour

depending upon seniority, and that partner rates range from $350 per hour to $600 per

hour.  Wigdor Decl. Ex. H.

 In addition, TWG regularly charges these rates to clients who retain the firm on

an hourly fee basis.  See Wigdor Decl. ¶ 7.  Because "the best measure of the cost of an

attorneys' time is what that attorney could earn from paying clients," Gusman v. Unisys

Corp., 986 F.2d 1146, 1150 (7th Cir. 1993), "[t]he attorneys' actual billing rate for

comparable work is 'presumptively appropriate' to use as the market rate." People Who

Care v. Rockford Bd. Of Educ., 90 F.3d 1307, 1310 (7th Cir. 1996) (quoting Gusman, 986

F.2d at 1150) (holding that "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court" because "[l]awyers do not come from cookie cutters. . . . Only an assumption that all lawyers are identical could support the averaging approach, under which all lawyers in a division of the court receive the same hourly fee.") Accordingly, these "usual hourly billing rates charged to paying clients. . . are reasonable rates of compensation for their work in this action" under fee-shifting statutes. Merriwether v. Coughlin, 727 F.Supp. 823, 831 (S.D.N.Y. 1989).

Accordingly, based on the factors discussed above and as set forth in the Wigdor Declaration, and in the supporting Declarations of Frederick K. Brewington and A. Kathleen Tomlinson, submitted herewith, an hourly rate of $450 for a partner, $300-350 for experienced associates, $265 for junior associates and $100 for paralegal staff is reasonable within the Eastern District of New York.

## 2.    The Hours Claimed Are Reasonable And Recorded

The party seeking an award of fees should submit evidence to support the number of hours worked and rates claimed. Id. However, the attorney "is not required to record in great detail how each minute of time was expended. But at least counsel should identify the general subject matter of his time expenditures." N.Y.S. Teamsters Conference Pension & Retirement Fund v. United Parcel Serv., Inc., No. 98 Civ. 1902, 2004 WL 437474 at *3 (N.D.N.Y. February 27, 2004) (citing Hensley, 461 U.S. at 437 n. 12). Plaintiff's submission herewith, encompassing 57 pages of contemporaneous time and billing records attached to the Wigdor Declaration clearly satisfy these requirements.

To determine the number of hours that are properly compensable, the court must initially consider the amount of time reasonably spent on each category of tasks, as

documented by the contemporaneous time records of the moving party's attorneys.  In calculating the number of reasonable hours, the court looks to its own familiarity with the case, its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.  Algie v. RCA Global Communications, Inc., 891 F.Supp. 875, 894 (S.D.N.Y. 1994) (internal citations omitted).

The Wigdor Declaration outlines the procedural history of the action and provides computerized timesheets memorializing contemporaneous time records for the attorneys and paralegal who worked on the matter.

## B.   Plaintiff's Fee Should Be Adjusted Upward Based On The *Hensley* Factors

The Supreme Court has held that the amount of the fee must be determined on the facts of each case.  Hensley, 461 U.S. at 429.  After calculating the lodestar, the district court may adjust the fee upward based on the following 12 factors: (1) the time and labor required; (2) the novelty and difficulty of the question presented; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[5]  Hensley, 461

---

[5] The Court should bear in mind that some of the 12 Hensley factors will naturally be taken into account in calculating the lodestar figure, which encompasses both the number of hours reasonably expended and the reasonable hourly rate charged by attorneys of similar skill, reputation, and experience, and that those factors should not occasion a duplicative adjustment to the lodestar.  Orchano, 107 F.3d at

U.S. at 430 n. 3 (referring district court to 12 factors in considering reasonableness of fee); Orchano, 107 F.3d at 98 (referring district courts to the 12 Hensley factors on considering upward adjustments of lodestar amount).

### 1. Plaintiff's Unprecedented Success

It is well-established that the degree of success obtained is the most critical factor to consider. Hensley, 461 U.S. at 424; Peacock v. Schwartz, 154 F.Supp.2d 428, 430 (E.D.N.Y. 2001) (degree of success is most critical factor in considering and awarding attorneys' fees). In fact, the Supreme Court has held that an upward adjustment may be appropriate where the fee applicant offers specific evidence to show first that the quality of service rendered was superior to that one should reasonably expect in light of the hourly rates charged and, second that the success was exceptional. Pierce v. Underwood, 487 U.S. 552, 582 (1988) (upward adjustment of fee award appropriate based on exceptional service and success). Plaintiff prevailed on the majority of the causes of action he alleged, and the jury awarded a verdict totaling over $7.5 million which amount was unprecedented in this district for a single plaintiff ADA case. Furthermore, the verdict was one of the largest single-plaintiff jury verdicts ever rendered under the ADA in the United States, which alone is testament to the astounding success of this action.

As shown in the sampling of the media's coverage of the verdict submitted herewith, this case has also generated considerable local, national and international print, television and Internet media attention resounding Plaintiff's victory against Wal-Mart. See Wigdor Decl. Ex. J. In a fee application, courts may consider both whether the lawsuit established a new rule of liability as well as the public interest furthered by the

---

101. Accordingly, these factors will support Plaintiff's requested lodestar amount as well as justify an increase of that amount.

result obtained. This verdict may encourage other victims of discrimination to similarly vindicate their civil rights through litigation. See Peacock, 154 F.Supp.2d at 430. As an illustration of this, following the media's reporting of Plaintiff's success, TWG received an increased volume of enquiries from prospective civil rights clients seeking legal assistance for the first time to redress alleged discrimination against them. The firm has also been contacted by several prominent groups, including the disability section of the AARP and the EEOC, hoping to assist in briefing should this matter be appealed to the Second Circuit. As a result of this lawsuit, the EEOC is also considering possible violation proceedings concerning the nationwide Consent Decree governing Wal-Mart's ADA practices. Accordingly, the requested hourly rates should be upwardly adjusted as a result of the unprecedented success obtained for Plaintiff.

### 2.     Plaintiff Obtained An Overall Successful Result In This Action

The fact that Plaintiff did not succeed on each and every claim alleged is not dispositive when considering the underlying success of this action. The Second Circuit has consistently held that, in addition to successful claims, "unsuccessful legal efforts are compensable as long as they are not frivolous." Blissett v. Casey, 969 F.Supp. 118, 130 (N.D.N.Y. 1997); see also Seigal v. Merrick, 619 F.2d 160, 165 (2nd Cir. 1980) (reversing deduction from fee award for work on unfruitful but not frivolous claims).

Significantly, the Second Circuit has held that fees should be awarded for unsuccessful claims that are based on common facts or similar legal theories to those claims successfully litigated by the prevailing attorney. Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2nd Cir. 1996). As stated in Hensley, this "results obtained" factor is particularly crucial where a Plaintiff is deemed prevailing even though he succeeded on

only some of his claims for relief. <u>Hensley</u>, 461 U.S. at 434. In dealing with partially

successful claims, two questions are presented: "First, did the plaintiff fail to prevail on

claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff

achieve a level of success that makes the hours reasonably expended a satisfactory basis

for making a fee award?" <u>Id</u>.

The <u>Hensley</u> Court explained its approach to cases involving unrelated claims as

follows:

> Many civil rights cases will present only a single claim. In
> other cases the plaintiff's claims for relief will involve a
> common core of facts or will be based on related legal
> theories. Much of counsel's time will be devoted generally
> to the litigation as a whole, making it difficult to divide
> the hours expended on a claim-by-claim basis. Such a lawsuit
> cannot be viewed as a series of discrete claims. Instead the
> district court should focus on the significance of the overall
> relief obtained by the plaintiff in relation to the hours
> reasonably expended on the litigation.

<u>Id.</u>, 461 U.S. at 435.

In applying these principles, courts routinely consider that a civil rights plaintiff is

successful even when a related cause of action is voluntarily dismissed and/or one or

more causes of action fail. In such cases, lack of success on an interrelated claim cannot

justify a reduction in an award of attorneys' fees. <u>LeBlanc-Sternberg v. Fletcher</u>, 143

F.3d 748, 762, 763 (2nd Cir. 1998) (plaintiffs' successful equitable claims against village,

establishing Fair Housing Act violation and conspiracy to violate rights under First

Amendment, were based on same core of facts and law as failed damages claims against

village and most of failed claims against individual defendants, for purpose of awarding

attorneys' fees); <u>Reed v. A.W. Lawrence & Co., Inc.</u>, 95 F.3d 1170, 1183 (2nd Cir. 1996)

(district court did not abuse its discretion in awarding employee's attorney fee request in

Title VII action for retaliation claim on which employee was successful, as well as sex discrimination claim which she voluntarily dismissed because case involved core of facts and related legal theories common to all claims advanced); Pinner v. Budget Mortgage Bankers, LTD, 336 F.Supp.2d 217, 221-222 (E.D.N.Y. 2004) (in a Title VII action involving retaliation, sexual harassment and a hostile work environment, Plaintiff's lack of success on sexual harassment and hostile work environment claim did not warrant a reduction of fee); Peacock, 154 F.Supp.2d 428, 431 (declining to reduce the fee requested based upon the pursuit of unsuccessful claims because all claims in this civil rights suit alleging an unreasonable search and seizure shared a common core of facts with successful claims and were therefore inextricably intertwined with each other making any reduction of fees unjust).

In the present action, Plaintiff succeeded on his claims under the ADA and the NYSHRL by: (1) proving that his transfer from the pharmacy to the parking lot to collect shopping carts and garbage was an adverse employment action; (2) proving that he was subjected to a hostile work environment; (3) and proving that Defendant Chin was individually liable because she had played a direct role in the underlying illegal conduct. Plaintiff also prevailed on separate claims under the ADA based on: (1) Wal-Mart's failure to provide a reasonable accommodation by failing to initiate a discussion with Plaintiff regarding the need for an accommodation based on his obvious disability; and (2) the prohibited disability-related inquiries Wal-Mart made relating to the job description he was required to sign prior to receiving a conditional offer of employment. Plaintiff's unsuccessful claims were based on interrelated facts: (1) the transfer from the position collecting shopping carts and garbage to the food department; (2) constructive

discharge; (3) the prohibited pre-employment disability-related inquiry made at his pre-employment medical examination where Plaintiff was asked about his prescription medications; and (4) a claim of intentional infliction of emotional distress. Plaintiff failed to prove that Defendant Bowen was individually liable and he withdrew his claim of negligent hiring and supervision before summary judgment.

The facts giving rise to all of Plaintiff's claims were interrelated, although this factual record gave rise to separate theories of liability and distinct causes of action that were asserted during this litigation. Therefore, the fact that Plaintiff was unsuccessful on a minority of his claims is not dispositive in determining the overall success of Plaintiff's lawsuit. The same amount of litigation would have been required to uncover the facts of this case during discovery and present them at trial regardless of the causes of action pursued. In short, there was no discovery that related only to an ultimately unsuccessful legal theory that would not have been required in litigating other theories. These basic facts were the grounds for all of the various causes of action pled in the Complaint and Amended Complaint, and were developed through Plaintiff's discovery requests, deposition questions, legal research, pre-trial briefs and submissions, the examination of witnesses at trial as well as post-trial briefs.

Consideration of the other applicable Hensley factors also justifies an upward adjustment of the fee award in this case.

### 3. Time And Labor Required

Defendants' vigorous defense of Plaintiff's case required substantial time and labor from Plaintiff's Counsel on this single-plaintiff case. Therefore an upward adjustment of the fee is appropriate. For example: (1) the parties had numerous

discovery disputes, several of which required judicial intervention; (2) Plaintiff had to

compel the deposition of Wal-Mart's ADA coordinator, which was ultimately held in

Bentonville, Arkansas; (3) Defendants filed a motion for summary judgment, which they

ultimately lost; (4) Defendants filed five motions *in limine*, all of which they lost; and (5)

Defendants have declared their intent to file various post-trial motions, including a

motion for judgment as a matter of law. Accordingly, Plaintiff's Counsel was and is still

required to expend considerable time and labor in litigating this case.

As the court noted in Gonzalez v. Bratton, 147 F.Supp.2d 180, 211 (S.D.N.Y.

2001), the time spent in prosecuting a litigation may be "a direct function of the

forcefulness and chosen strategies of the defense." In that case, like here, the litigation

effort consumed numerous hours and resulted in TWG incurring expense as a result of

Defendants' sustained and aggressive challenge to Plaintiff's claims.

Moreover, when considering the time spent on written work product, the Eastern

District has noted that "legal research and litigation are to a large degree arts . . . like any

creative artist, the good litigator may pursue many blind alleys and revise many drafts

before producing the convincing brief or argument . . . close scrutiny of the work may

ameliorate but cannot eliminate the problem of unnecessary work and undue delay under

lodestar." See In re Agent Orange Product Liab. Litig., 611 F.Supp. 1296, 1306

(E.D.N.Y. 1985) modified on other grnds, 818 F.2d 226 (2nd Cir. 1987). Undeniably,

legal work comes together slowly and in pieces and, by these standards, revising work

product is a common and expected aspect of the successful litigator. See id.

Accordingly, the time billed by Plaintiff's Counsel is reasonable albeit that a portion of

that time was spent in revising and finalizing documents, memoranda, briefs, and other court submissions.

### 4.      Novelty And Difficulty Of Question Presented

This matter did present novel and intricate legal issues.  Specifically, the issue regarding Wal-Mart's violations of the ADA by making prohibited disability-related inquiries was novel because, in proving Wal-Mart's liability, Counsel relied on Wal-Mart's violation of the nationwide Consent Decree as well as the ADA.  Amazingly, when TWG raised the Consent Decrees for the first time, even Defendants' counsel did not know of their existence.  Obviously, these documents were not produced by Defendant Wal-Mart in discovery, but required extensive research by TWG to uncover their existence.  A specific provision of the Consent Decree prohibited Wal-Mart's use of the Matrix of Essential Job Functions or any similar document inquiring as to whether applicants could perform essential job functions, either with or without a reasonable accommodation.  The analysis of the Consent Decree and its various violations required an understanding of its impact, the case law relating to the consequence of violating a Consent Decree as well as the existing precedent under the ADA.  This case also presented the novel situation where the defendant employer -- and not, as is typical, the plaintiff employee -- had an obligation to initiate the interactive process contemplated by the ADA to discuss the possibility of a reasonable accommodation for Plaintiff given his obvious disability and perceived problematic work performance.  In addition, this case also presented the difficulty that Plaintiff sought to redress employment discrimination despite having been a new employee and/or having worked for Defendants for a short period of time.

### 5.     Skill Required To Perform Legal Service Properly

A great deal of skill was required to perform the legal services properly.  Plaintiff was faced with a formidable opponent, considering that Wal-Mart is the world's largest retailer and had considerable assets and resources at its disposal in defending this action. Further, Defendants procured Brown Raysman Millstein Felder & Steiner, LLP ("Brown Raysman") as their counsel.  Brown Raysman is a Martindale AV rated firm for civil trial practice, has several offices in the New York metropolitan area, and employs at least 220 attorneys and a full staff of paralegals, secretaries and litigation support.  Moreover, lead counsel for Defendants, Joel Finger, "is one of the most experienced and well-respected attorneys in his field today."  See Wigdor Decl. Ex. F.  Plaintiff, therefore faced this challenge with a smaller law firm with substantially fewer resources, attorneys and support staff.  In addition, the novel and difficult legal issues raised in this litigation required skill and expertise in disability discrimination law.

### 6.     Preclusion Of Other Employment

Counsel was precluded from pursuing other litigation matters by accepting this case.  Counsel has represented Plaintiff for over two and a half years, during which considerable time and effort were spent on this litigation.  Consequently, and because of the current size and limited time and resources of TWG, other employment opportunities had to be passed over.

### 7.     Experience, Reputation And Ability Of Attorneys

As indicated in the Wigdor Declaration, Counsel is experienced, well regarded and adept.  The skills and qualifications of Mr. Wigdor and Ms. le Roux, along with the other attorneys and staff at TWG, played a crucial and necessary component in ensuring

the success of this action at every stage of the litigation and justify an upward adjustment of the fees sought in this application.

### 8.    Contingency Fee Arrangement

Despite Plaintiff's contingency fee arrangement with Counsel, he is still entitled to the full benefit of the rates he requested as well as any enhancement of that rate that the Court may deem appropriate. Contingency fee arrangements do not place a ceiling upon the fees he may recover as a prevailing plaintiff in a civil rights action. Blanchard v. Bergeron, 489 U.S. 87, 94 (1989) (a contingent fee arrangement does not impose an automatic ceiling on an award of attorneys' fees, to hold otherwise would be inconsistent with the statute, its policy and purpose). In addition, the contemplated contingency fee was already reduced when the verdict awarded to Plaintiff was reduced by approximately $4.5 million as a result of the application of the statutory caps on damages pursuant to 42 U.S.C. § 1981a. Indeed, this Court recognized in its judgment that because of the size of Wal-Mart and due to the statutory caps "[t]here is no meaningful sense in which such an award can be considered punishment." Wigdor Decl. Ex. A.

### 9.    Undesirability Of Case

While this case was not wholly undesirable, it did present significant legal challenges from its inception and was by no means a sure winner. Additionally, the fact that Mr. Brady, who is a low wage earner, could not pay Counsel's typical hourly rates necessitated a contingency fee arrangement. In many instances, the successful vindication of an individual's civil rights depends on the willingness of capable attorneys to accept cases based on contingent fees. Lenihan v. City of New York, 640 F.Supp. 822, 829-830 (S.D.N.Y. 1986) (providing a twenty percent upward adjustment based on, *inter*

*alia*, the undesirability of the case and client's apparent inability to pay prevailing market

rate). A typical attorney-client relationship based on the prevailing market rate an

attorney in private practice charges his clients reflects the expectation that the attorney

will be paid for all of the hours devoted to the case, regardless of whether or not his client

wins. Id. Accordingly, where an attorney has assumed a substantial risk of not being

paid, it is appropriate to adjust the prevailing-market-rate attorneys' fees award upward.

Id. In the present action, Counsel's risk in taking this case on a contingency fee

arrangement, along with the significant legal challenges posed by facing Wal-Mart, the

nation's largest retailer, posed a grave risk that the time and effort Counsel spent would

not be adequately compensated. Therefore, an upward adjustment of the fee award is

warranted.

**10.     Awards In Similar Cases**

Finally, awards in similar cases clearly indicate that attorneys, even from small

firms, have been granted lodestar rates as high as $400 per hour. See Kuper, 2003 WL

23350111 at *9 (approving hourly rate of $420 an hour for an experienced attorney

working at a two attorney employment discrimination law firm); N.Y.S. NOW, 2003

WL 2006608, at *2 (approving hourly rates of $430 and $400 an hour experienced small

firm civil rights litigators); Ursa Minor Ltd., 2001 WL 1842042, at *7 (hourly rates of

$450-550 for partners, $335 for senior associates and $285 for mid-level associates

within normal New York City range); Bianco, 284 B.R. 349, 352 (partner's rate of $535-

595 reasonable); Blue Cross & Blue Shield of N.J., Inc., 190 F.Supp.2d 407, 426

(partners' rate of $449-540 did not exceed norm for New York community); Skold, 1999

WL 405539 at *7 ($400 for partner overseeing litigation); Rodriguez ex rel. Kelly, 84

F.Supp.2d. 417, 421 ($425 for partner on civil rights case);  BNP-Dresdner Bank Zao,

1998 WL 831353 at *5 (awarding $400 for partner);  Berlinsky, 970 F.Supp. 348, 351

(awarding partner $495, associates $365-225).

Moreover, the fact that these rates were awarded by courts in the Southern District

of New York does not preclude this Court from considering them in rendering the

pending fee award.  Lawyers from the Southern District frequently appear in the Eastern

District and the rates charged by Southern District attorneys have been awarded in

Eastern District litigation.  See e.g., New Leadership Comm. v. Davidson, 23 F.Supp.2d

301, 305 (E.D.N.Y. 1998) (holding courts situated in Eastern District of New York may

consider the higher rates of attorneys practicing in the Southern District in rendering a fee

award for a plaintiff who was represented by an attorney with offices located in the

Southern District); Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60

(E.D.N.Y. 2003) (in formulating attorney fee award to plaintiff district court in the

Eastern District of New York would use higher hourly rates charged by Southern District

attorneys, where plaintiff's law firm was from the Southern District and that plaintiff

should not be awarded arbitrarily imposed, lower attorneys' fees simply because its

lawyers were from Manhattan).

In New Leadership, the court affirmed the application of Southern District rates to

an Eastern District case and rejected the defendants' argument that Eastern District courts

should be prohibited from considering rates charged in any district other than the one in

which the court sits.  Id. at 304.  The court in New Leadership found that the Southern

District can be considered in fixing rates in the Eastern District.  See id.  That court

recounted the historical and geographical contexts that led to the creation of two separate

districts that divided the City of New York, and noted that the uniqueness of the Eastern and Southern Districts' proximity had led to such innovations as the adoption of one set of local rules that are nearly identical for both districts as well as the relaxation of the usual district residence requirement for district judges and United States attorneys. Id. at 304-305. Accordingly, as Plaintiff's counsel as well as Wal-Mart's counsel are situated in the Southern District, this Court should consider those rates, even if higher than those of the Eastern District, in making its determination on the present fee application.

## II.   ATTORNEYS' FEES INCURRED IN MAKING THIS MOTION AND TAXABLE DISCRETIONARY COSTS SHOULD ALSO BE AWARDED

### A.   "Fees On Fees"

Attorneys' fees should be awarded for time spent on this fee application, so-called "fees on fees." It is well-settled that time reasonably spent by plaintiffs' attorneys in establishing their fee pursuant to fee-shifting statutes, such as 42 U.S.C. §12205, is recoverable. See Pascuiti v. N.Y. Yankees, 108 F.Supp.2d 258, 273 (S.D.N.Y. 2000) (awarding prevailing plaintiff attorneys' fees for time spent preparing its motion for attorneys' fees); Gagne v. Maher, 594 F.2d 336, 344 (2d Cir. 1979), aff'd on other grounds, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980) ("time reasonably spent by plaintiff's attorneys in establishing their fee" pursuant to fee shifting statutes is "compensable"); see also Davis v. City of New Rochelle, N.Y., 156 F.R.D. 549, 560 (S.D.N.Y. 1994). The submitted time for preparing this fee application is reasonable and should therefore be compensated.

### B.   Costs Should Be Awarded

Finally, in addition to attorneys' fees, taxable and discretionary costs were incurred in connection with the litigation of this action. These costs and out-of-pocket

expenses are of the type routinely billed by Counsels' fee-paying clients, are necessary items incurred in the litigation process and may be awarded on this fee application. The plaintiff is also entitled to costs or "those reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying clients." Reichman v. Bonsignore, Brignati & Mazzotta P.C., 818 F.2d 278, 283 (2d Cir. 1987).

Further, pursuant to Local Civil Rule 54.1, taxable costs such as the costs associated with transcripts, depositions, witness fees, transportation, copying, docket fees and other miscellaneous fees may also be recovered. Plaintiff has submitted a bill of costs and additional out-of-pocket expenses attached to the Wigdor Declaration together with supporting documentation for these expenses and costs. Wigdor Decl. Ex. C. Accordingly, Plaintiff respectfully requests that Defendants be ordered to reimburse Plaintiff for these taxable costs and other discretionary costs.

**III.    PRE- AND POST-JUDGMENT INTEREST SHOULD BE AWARDED**

Under applicable Second Circuit caselaw, Plaintiff is entitled to an award of pre- and post-judgment interest on the damages awarded to him by the jury, and the Judgment entered on June 23, 2005 should be amended pursuant to Fed.R.Civ.P. 59(e) to reflect such interest.

District Courts are entitled to award pre-judgment interest on compensatory damages awards in employment discrimination cases. See Robinson v. Instructional Systems, Inc., 80 F.Supp.2d 203, 207 (S.D.N.Y. 2000) (awarding pre-judgment interest on back pay and compensatory damages since interest would make plaintiff whole, employer would not profit from delay in paying wages and remedial purpose of anti-discrimination statute would be served); Perdue v. City University of New York, 13

F.Supp.2d 326, 342 (E.D.N.Y. 1998) (awarding pre-judgment interest on back pay and compensatory damages); Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 55 (2d Cir. 1998) (pre-judgment interest may be awarded on back pay); Kuper v. Empire Blue Cross & Blue Shield, 2003 WL 23350111 at *2 (S.D.N.Y. 2003) (noting that "it is ordinarily an abuse of discretion not to include pre-judgment interest" on back pay award from time claim arose until entry of judgment and recognizing that courts may award pre-judgment interest on compensatory damages).

Post-judgment interest should be awarded to compensate Plaintiff for the delay suffered from the time his damages were reduced to an enforceable judgment, on June 23, 2005, until the time that Defendants ultimately pay the judgment.  See U.S. v. Tate & Lyle North American Sugars, Inc., 90 A.F.T.R.2d 2002-6485 (S.D.N.Y. 2002). Post-judgment interest, like pre-judgment interest, is awarded pursuant to 28 U.S.C. § 1961, is available on the full judgment amount and accrues from the date that the judgment is "ascertained in a meaningful way" and "supported by the evidence." Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 55 (2d Cir. 1998).  Plaintiff, as the prevailing party on his federal claims is entitled to post-judgment interest on all money awards. Gilbert v. Hotline Delivery, 2001 WL 799576 (S.D.N.Y. 2001); Greenway, *supra*.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion and enter an Order: (1) awarding attorneys' fees in the sum of $804,187.00; (2) granting an appropriate upward adjustment on the attorneys' fees awarded; (3) awarding costs in the sum of $42,072.02; (4) amending the judgment so as to reflect these attorneys' fees, costs and pre-and post-judgment interest; and (5) granting such other and further relief as the Court deems proper.

Dated: New York, New York
      June 27, 2005

Respectfully submitted,

**THOMPSON WIGDOR & GILLY LLP**

By:    Douglas H. Wigdor (DW-9737)
       Michelle M. le Roux (ML-2773)

Empire State Building
350 Fifth Avenue, Suite 5720
New York, New York 10118-0110
(212) 239-9292

Attorneys for Plaintiff Patrick Brady

26