UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
PATRICK S. BRADY,                                  :
                                                   :
                              Plaintiff,           :
                                                   :
              v.                                   :      Case No. 03-CV-3843 (JO)
                                                   :
WAL-MART STORES, INC., YEM HUNG                    :
CHIN, and JAMES BOWEN,                             :
                                                   :
                              Defendants.          :
--------------------------------------------------------------X


# PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, PRE- AND POST-JUDGMENT INTEREST

THOMPSON WIGDOR & GILLY LLP
Douglas H. Wigdor (DW-9737)
Michelle M. le Roux (ML-2773)
Empire State Building
350 Fifth Avenue, Suite 5720
New York, New York 10118-0110
Tel.: (212) 239-9292
Fax: (212) 239-9001

September 1, 2005                    Counsel for Plaintiff

## TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………………..i

TABLE OF AUTHORITIES…………………………………………………………..ii

ARGUMENT……………………………………………………………………………...1

I.     PLAINTIFF IS ENTITLED TO THE REQUESTED FEES……………………………..1

       A.     Plaintiff's Requested Hourly Rate Is Reasonable…………………………………1

       B.     The Requested Hours Are Reasonable……………………………………………6

II.    PLAINTIFF IS ENTITLED TO AN UPWARD ENHANCEMENT OF THE FEE……...8

III.   PLAINTIFF IS ENTITLED TO RECOVER THE REQUESTED "FEES ON FEES"…...9

IV.    PLAINTIFF'S COSTS SHOULD NOT BE REDUCED………………………………..10

V.     PLAINTIFF IS ENTITLED TO PRE- AND POST-JUDGMENT INTEREST………...10

CONCLUSION…………………………………………………………………………...11

# TABLE OF AUTHORITIES

## CASES

Arbor Hill Concerned Citizens Neighborhood Assoc. v. County of Albany,
  369 F.3d 91 (2d Cir. 2004)................................................................2, 3

Blissett v. Casey,
  969 F.Supp. 118 (N.D.N.Y. 1997)........................................................6

Hensley v. Eckhart,
  461 U.S. 424 (1983)........................................................................6

Kim v. Dial Service Int'l,
  1997 WL 458783 (S.D.N.Y. August 11, 1997)...........................................7

Levy v. Powell,
  2005 WL 1719972 (E.D.N.Y. July 22, 2005)............................................6

Loper v. New York City Police Dep't,
  853 F.Supp. 716 (S.D.N.Y. 1994)........................................................9

Meacham v. Knolls Atomic Power Laboratory,
  185 F.Supp.2d 193 (N.D.N.Y. 2002)...................................................10

Merriwether v. Coughlin,
  727 F.Supp. 823 (S.D.N.Y. 1989).......................................................4

Murray v. Mills,
  354 F.Supp.2d 231 (E.D.N.Y. 2005)....................................................9

New Leadership Committee v. Davidson,
  23 F.Supp.2d 301 (E.D.N.Y. 1998).....................................................3

Pinner v. Budget Mortgage Bankers, Ltd.,
  336 F.Supp.2d 217 (E.D.N.Y. 2004)....................................................4

Quinn v. Nassau County Police Dep't,
  75 F.Supp.2d 74 (E.D.N.Y. 1999).......................................................9

Reed v. A.W. Lawrence & Co.,
  95 F.3d 1170 (2nd Cir. 1996)............................................................6

Sea-Spray Holdings, Ltd. v. Pali Financial Group, Inc.,
  277 F.Supp.2d 323 (S.D.N.Y. 2003).....................................................8

Plaintiff Patrick Brady ("Plaintiff" or "Mr. Brady") respectfully submits this reply memorandum of law in further support of his motion for attorneys' fees, costs and pre- and post-judgment interest ("Plaintiff's motion").[1] Defendants' opposition to Plaintiff's motion ("Def. Mem.") utterly fails to demonstrate grounds on which to reduce either the hourly rate or number of hours requested by Plaintiff, or on which to deny the requested enhancement, costs and interest.

**ARGUMENT**

**I.    PLAINTIFF IS ENTITLED TO THE REQUESTED FEES**

**A.    Plaintiff's Requested Hourly Rate Is Reasonable**

The determination of the applicable hourly rate in a fee application is a matter squarely within the trial court's discretion. See 42 U.S.C. §12205. In fact, our research revealed no cases where the Second Circuit modified the district court's decision as to the applicable hourly rate, deferring instead to the determination reached by the trial court based on the Court's observations of the skill of counsel. Based upon these observations and the Court's familiarity with the case, we are confident that the Court would agree that the proposed rates are appropriate. Defendants, however, attack Plaintiff's requested hourly rate on essentially three grounds. First, that the Eastern District is the "relevant community" from which to determine the appropriate hourly rate;[2] second, that the customary rates provided in Plaintiff's motion are

---

[1] The Court is respectfully referred to the facts and procedural history set forth in Plaintiff's initial submissions, including the Affirmation of Douglas H. Wigdor ("Wigdor Aff."), in support of his motion and in the Reply Affirmation of Douglas H. Wigdor ("Wigdor Reply Aff.") submitted herewith, attached to which are updated billing and expense reports current through August 31, 2005 reflecting the updated requested fees ($884,647.00) and expenses ($44,715.25). The Court is also respectfully referred to Plaintiff's arguments set forth in his original moving papers ("Pl. Mem.") for additional amplification of the bases and justifications for Plaintiff's motion.

[2] Contrary to Defendants' claim, the Declarations of Frederick Brewington and Kathleen Tomlinson are properly before the Court since the former was "duly sworn" and the latter was made explicitly "pursuant to 28 U.S.C. § 1746." Defendants' opposition to Plaintiff's motion also claims that Frederick Brewington is being "disingenuous" in his Declaration since he requested a rate of $300/hour in his own fee application. Def. Mem. 5-6. Mr. Brewington is not being disingenuous here since he is only declaring that "the rates requested by [TWG] are more than reasonable in light of the experience of the attorneys, the complexity of the case and the results achieved

unreliable; and, third, that Plaintiff's counsel is not sufficiently experienced[3] to command such

rates and that the size of Plaintiff's counsel's law firm, Thompson Wigdor & Gilly ("TWG")

warrants a reduction in the applicable hourly rate.

This case was litigated in the Eastern District by two New York City law firms. As such,

hourly rates charged in the Southern District should be used in determining Plaintiff's counsel's

fee on this matter. Further, Plaintiff's requested hourly rates are not "stratospheric," as

Defendants claim, but are in line with both TWG's customary rate to clients who are represented

on an hourly basis, as demonstrated by a sampling of several retainer agreements attached as

Exhibit E to the Wigdor Reply Affirmation, and with rates of comparable attorneys in New

York.[4]  See Pl. Mem. at 6-10. In addition, contrary to Defendants' argument that Plaintiff has

not demonstrated that local counsel was unwilling to take the case, in fact, this matter was

referred to TWG because of the expected complexity of the case and challenges of litigating

against Wal-Mart by a local Long Island attorney whose firm handles civil rights cases. Wigdor

Aff. ¶ 3.

Defendants' reliance on Arbor Hill Concerned Citizens Neighborhood Assoc. v. County

of Albany, 369 F.3d 91, 96 (2d Cir. 2004) as authority for the proposition that only the forum

district rates should apply is misplaced. Arbor Hill is distinguishable since all aspects of that

litigation occurred in the Northern District of New York and the only connection with Manhattan

---

herein." Moreover, Mr. Brewington's § 1983 case against Nassau County is markedly different to this ADA
litigation against Wal-Mart and its resources, which act as a deterrent to bringing suit.
    [3] Defendants erroneously state that TWG partners have only ten years of experience, when in fact they have
at least twelve years each.
    [4] Defendants' claim that TWG's claimed customary rates are unreliable -- apparently based on what
appears to be a highly improper conversation between Defendants' counsel and opposing counsel on an unrelated
matter in which TWG represents First Wireless Group ("First Wireless") -- should be summarily rejected. Not only
does Plaintiff now provide additional evidence of TWG's actual customary rates in the form of the attached
retainers, but also the reason for the lower rates in the First Wireless litigation: TWG substituted as counsel in that
matter and therefore assumed the discounted rates already negotiated between First Wireless and its prior attorney.
Wigdor Aff. ¶ 2. Significantly, TWG's rates in the First Wireless matter ($300/hour for partners and $275/hour for
associates) are still higher than those requested here by Defendants ($225/hour for partners and $175-200/hour for
associates).

was that it was the location of the office of counsel. Here, however, actual proceedings,

including several depositions, in the case took place in the Manhattan offices of both Plaintiff's

and Defendants' counsel. Further, unlike in Arbor Hill, Plaintiff is able to demonstrate that local

counsel was unwilling to accept this representation. See Wigdor Reply Aff. ¶ 3.[5]

Defendants also argue that the requested rates are not justified by the experience or size

of TWG. First, however, Defendants' requested rate of $225 for TWG partners and $200 for

associates is outrageous since it would award TWG partners rates which fall within the low end

of the range of rates charged by Brown Raysman in 2004 for associates, $190-400/hour. See

Wigdor Aff. Ex. H. Second, the $25 difference between TWG associates and partners is

contrary to typical practice in which billing rates range broadly based on experience. Third, we

are confident that the Court will find that the submissions in this case, and the conduct of and

result achieved at trial, also demonstrate the skill and experience of Plaintiff's counsel, and the

appropriateness of the requested rates. Finally, Defendants' attempt to pigeonhole TWG as a

plaintiffs'-side-only law firm is erroneous, since TWG represents both plaintiff employees and

defendant companies in employment litigation and therefore should not be restricted to rates

---

[5] Defendants also attempt to distinguish the authority relied on by Plaintiff, but ultimately fail to
demonstrate that those cases should not apply here. For example, New Leadership Committee v. Davidson, 23
F.Supp.2d 301 (E.D.N.Y. 1998) is not superseded by Arbor Hill since that case is distinguishable, as set forth above.
In addition, Defendants' tortured reasoning that New Leadership requires that counsel can only receive New York
City rates in an Eastern District case if the case is litigated in the Brooklyn courthouse of the Eastern District
because the case is then in the "same city" ignores the simple fact that the Brooklyn and Central Islip courthouses
are both in the Eastern District. Def. Mem. at p. 8, n. 6. See also Tokyo Electron Arizona, Inc. v. Discreet
Industries Corp., 215 F.R.D. 60, 63 (E.D.N.Y. 2003)(holding that "it is not improper or unreasonable to apply
Southern District rates to litigation in this district, at the judge's discretion, even if the litigation has taken place not
in Brooklyn, a borough of New York City, but in Central Islip, a satellite courthouse of the Eastern District").
Defendants next attempt to distinguish Tokyo, in part, on the basis that Plaintiff's contingent fee arrangement with
TWG somehow undermines the Court's discretion to award Southern District rates to Southern District attorneys
because Plaintiff did not actually incur out-of-pocket expense to compensate his counsel, and that Tokyo concerned
an award of fees imposed as a discovery sanction. However, this misses the mark since actual payment of fees is not
a prerequisite to recovering them as a prevailing party and, in both Tokyo and the instant matter, the court was
exercising its discretion in awarding fees based on a statutory entitlement. Moreover, just like in Tokyo, Defendants
were always aware of the possibility that they might be required to pay Plaintiff's attorneys' fees and that his
counsel is based in Manhattan.

awarded previously to the plaintiffs' bar. Wigdor Reply Aff. ¶ 4.

Defendants rely on <u>Pinner v. Budget Mortgage Bankers, Ltd.</u>, 336 F.Supp.2d 217 (E.D.N.Y. 2004) as authority for their requested rate reduction, but <u>Pinner</u> is distinguishable from, and therefore inapplicable to, this litigation. First, that case was a "garden-variety Title VII sexual harassment and retaliation case. The case involved no complex issues of law or fact or novel evidentiary issues and only five exhibits were introduced in evidence." <u>Id.</u> at 220. Second, the <u>Pinner</u> court noted only that "[s]ome Eastern District courts have followed the [Supreme Court's] <u>Savino</u> standard," making clear that courts were not required to follow <u>Savino</u>. <u>Id.</u> at 220. Finally, the <u>Pinner</u> court explicitly reasoned that the rates it applied were arrived at following consideration of "all the factors in <u>Hensley</u>, the probable increase in fees since <u>Savino</u> was decided in 1998, the facts and circumstances of this case and the experience of [plaintiff's counsel]." <u>Id.</u> Here, a similar consideration of all these factors supports Plaintiff's requested rates and fees, as set forth in Plaintiff's submissions on this motion.

Defendants also argue that TWG's size requires that the requested rates be reduced. First, as a point of clarification, TWG presently employs 8 attorneys, not just the 3 partners listed in the Martindale.com directory. Second, TWG's overhead at its Firth Avenue office is comparable and proportional to that of larger firms, such as Brown Raysman's Third Avenue offices, and reflected in the requested rates. Third, as demonstrated by the attached retainers, TWG commands comparable if not higher hourly rates in the market to those of larger firms. (Wigdor Reply Aff. Ex. E). Accordingly, these "usual hourly billing rates charged to paying clients . . . are reasonable rates of compensation for their work in this action" under fee-shifting statutes. <u>Merriwether v. Coughlin</u>, 727 F.Supp. 823, 831 (S.D.N.Y. 1989). TWG's size is therefore not determinative of the reasonable hourly rate that should be awarded in a fee

4

application.

Finally, despite Plaintiff's request and the obvious relevance to Plaintiff's motion, Defendants' counsel has refused to produce information concerning their own hourly rates, time spent and expenses in this litigation.[6]  Defendants have no reasonable or legitimate basis for refusing to provide this information which is relevant to the determination of a reasonable fee in this case.  The rates charged by Defendants' counsel are also relevant to the Court's determination of the rates in the "relevant community" for this litigation.  Defendants claimed, first, that Plaintiff's request was somehow untimely, even though Defendants themselves only requested a copy of Plaintiff's retainer following the submission of Plaintiff's original moving papers.  Second, Defendants proposed that the parties conduct discovery as to Plaintiff's counsel's experience and qualifications.  While we would be happy to answer any questions that the Court may have regarding our qualifications, this is not required since Defendants have already received all relevant information on that topic from documentation and declarations provided for purposes of this motion and would serve only to further stall and delay the recovery of the fees, interest and the judgment in this case.  Finally, Defendants claimed that this information was privileged or confidential proprietary information.  However, like Plaintiff's production of relevant information, Defendants' concerns could be protected through redaction and the designation of such information as confidential. Defendants have failed to demonstrate that Plaintiff's requested hourly rate[7] is unreasonable and therefore, Plaintiff's motion should be granted on the requested hourly rate.

---

[6] A copy of Plaintiff's request and a copy of Defendants' refusal are attached as Wigdor Reply Aff. Ex. C and D.

[7] Similarly, Defendants' argument that Plaintiff has requested an excessive paralegal rate should be rejected since TWG's smaller size does have one relevant effect -- paralegal staff are used for more substantive work than is typical at a larger firm.

5

**B.    The Requested Hours Are Reasonable**

Defendants argue that Plaintiff's requested fees should be reduced for time spent on so-called unsuccessful claims.  However, in this case, the facts and circumstances that gave rise to Plaintiff's successful claims were the self-same facts and circumstances that required discovery on all of Plaintiff's other claims.  Therefore, the fact that Plaintiff did not uniformly succeed in his claims at trial does not mean that he cannot recover for fees and costs associated with all of his related claims since none of them were frivolous and they arise from "a common core of facts" and were "based on related legal theories."  Hensley v. Eckhart, 461 U.S. 424, 435 (1983).  See also Blissett v. Casey, 969 F.Supp. 118, 130 (N.D.N.Y. 1997); Seigal v. Merrick, 619 F.2d 160, 165 (2nd Cir. 1980); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2nd Cir. 1996); and other cases cited in Pl. Mem. at 13-16.

First, the two unlawful disability-related pre-employment inquiries that arose in this case -- the job description inquiry and medical examination -- are essentially the same claim under the same legal theory and the fact that Plaintiff was successful on the former but not the latter claim does not require the subtraction of time spent on the latter claim.  Moreover, Defendants' requested reduction of 5% on this claim is unreasonable.  Second, Defendants request a further 15% reduction in Plaintiff's lodestar because the jury did not find in Plaintiff's favor on his claims for the unlawful transfer to the food department and constructive discharge.[8]  In addition, the authority relied on by Defendants for this reduction is inapplicable here.  In Levy v. Powell, No. CV-00-4499, 2005 WL 1719972 at *12 (E.D.N.Y. July 22, 2005), the Court reduced the requested lodestar by 25% because the plaintiff withdrew claims prior to trial and ultimately only prevailed on one of the three claims that proceeded to trial.  Shannon v. Fireman's Fund

---

[8] As a preliminary matter, it is unclear what Defendants considered in determining that 80 hours were spent on matters relating to Plaintiff's economic expert, Professor Mark Killingsworth, since Plaintiff's calculation reflects approximately half that time was spent on Plaintiff's economic expert.

6

Insurance Co., 156 F.Supp.2d 279 (S.D.N.Y. 2001) is distinguishable because plaintiff's counsel in that case had only limited experience in civil rights litigation. Id. at 300. Finally, Kim v. Dial Service Int'l, No. 96 CIV. 33271997, WL 458783 at *18 (S.D.N.Y. August 11, 1997) is inapplicable here since the 15% reduction imposed was the result of the plaintiff only being successful on race discrimination claims, but not on the separate legal theories and claims for national origin and age discrimination and breach of contract. Third, Defendants seek a reduction for the time spent on a discovery motion that sought, among other things, an inspection of the Wal-Mart store. Defendants minimize the importance of Plaintiff's successes on that motion, most notably in obtaining the deposition of Linda Whittaker, Wal-Mart's ADA coordinator whose deposition was vehemently opposed, but whose testimony was critical to proving the violations of the nationwide Consent Decree and punitive damages. Fourth, Defendants seeks yet another reduction of the lodestar by 30%, claiming that the hours spent by Plaintiff on this case are "highly unreasonable." Def. Mem. at 15. Since Defendants refuse to produce their billing records, it is impossible to compare the efforts of counsel in this case, for example, in the areas of deposition preparation and attendance, opposing Defendants' summary judgment motion,[9] preparing the instant motion, discovery requests and initial disclosures, mediation,[10] trial preparation[11] and other miscellaneous time.[12] Def. Mem. at 15-21. The time

---

[9] Defendants mischaracterize the effort required to prepare Plaintiff's 3-page response to Defendants' request for a pre-motion conference on their summary judgment motion since this required comprehensive legal research and analysis of the factual record in order to rebut each argument proposed as a basis for Defendant' motion for summary judgment. Def. Mem. at 17-18.

[10] The mediation of this matter required both the preparation of a lengthy pre-mediation statement as well as opening statements and a presentation of the facts by counsel. Moreover, Defendants were also represented at the mediation by two similarly senior attorneys, namely Joel Finger and an in-house attorney from Wal-Mart.

[11] Plaintiff's preparation for trial was not excessive or unreasonable given that there were 20 potential witnesses to prepare for, five motions in limine to oppose, proposed voir dire and 31 pages of proposed jury instructions to draft. Defendants' own proposed jury instructions were 24 pages in length. In addition, Plaintiff did not in fact bill for the attendance of three attorneys at all stages of the trial proceedings.

[12] For example, Plaintiff's counsel's discussions with potential third parties interested in filing amicus briefs in this matter is legitimately recovered, as is the reasonable efforts to anticipate Defendants' Rule 50 and 59 motions. Def. Mem. at 19-20. In addition, 24 hours was a reasonable amount of time spent drafting correspondence

7

spent on all of these activities was not excessive or unreasonable, as shown in the detailed and comprehensive contemporaneous billing records submitted in support of Plaintiff's motion. Moreover, it is often impossible to confirm Defendants' calculations of the time spent by Plaintiff on certain tasks and assignments since they fail to specify which entries in Plaintiff's billing records they are relying on in these calculations. Fifth, Defendants request yet another 15% reduction in the total lodestar, claiming that Plaintiff's counsel engaged in block-billing, which is untrue. As set forth in the authority cited by Defendants, block-billing is "a form of time-keeping that involves stating the total daily time spent on a case, rather than separating out the time into individual entries describing specific activities." Sea-Spray Holdings, Ltd. v. Pali Financial Group, Inc., 277 F.Supp.2d 323, 326 at n. 3. Here, each entry in the billing records provided sets forth with specificity the nature of the work performed. Finally, Defendants seek a cumulative reduction of Plaintiff's requested lodestar by an effective 72%, from $804,187.00 to $224,682.95, by applying several reductions cumulatively to the requested lodestar. Def. Mem. at 21. Defendants have not cited any authority for such an approach and it should be rejected.

## II.   PLAINTIFF IS ENTITLED TO AN UPWARD ENHANCEMENT OF THE FEE

Were the Court to reduce the requested lodestar, Plaintiff is still entitled to an upward enhancement of this award based on the Hensley factors, as discussed at length in Plaintiff's original submission on this motion. Pl. Mem. at 11-23. On the most important factor -- the overall success of the action -- Plaintiff prevailed on the majority of his claims and was awarded a verdict that was unprecedented both in this district and nationwide for a single plaintiff ADA discrimination claim. Novel and intricate legal issues were litigated as well, most notably the

---

concerning Defendants' discovery deficiencies since this required a thorough review and analysis of the voluminous document production made in this matter. Def. Mem. at 21.

impact of the nationwide Consent Decree[13] and Wal-Mart's obligation to initiate the reasonable accommodation process.[14]  Moreover, contrary to Defendants' claim, an upward enhancement of the lodestar figure in a discrimination case has previously been awarded in this District.  See Quinn v. Nassau County Police Dep't, 75 F.Supp.2d 74, 79 (E.D.N.Y. 1999).  In addition, even the authority cited by Defendants as barring upward enhancement acknowledges that it may still be appropriate where there is a delay in the payment of fees -- as there is here -- or where "as a matter of public policy, it is the type of case worthy of judicial encouragement."  Loper v. New York City Police Dep't, 853 F.Supp. 716, 723 (S.D.N.Y. 1994).  Given the Court's own acknowledgment that Wal-Mart is likely to "inflict similar abuses on those who may be doomed to follow in Brady's footsteps," the nationwide Consent Decree violation proven in this case and the Court's recognition that Wal-Mart "perceives . . . effective immunity from the civil punishment scheme," this litigation clearly served the public interest and is worthy of judicial encouragement.  (Wigdor Reply Aff. Ex. F at 8).  Therefore, the lodestar determined by the Court should be upwardly enhanced.

## III.    PLAINTIFF IS ENTITLED TO RECOVER THE REQUESTED "FEES ON FEES"

Defendants rely on the fee approved in Murray v. Mills, 354 F.Supp.2d 231 (E.D.N.Y. 2005) for their claim that Plaintiff is only entitled to recover between 5 and 15 hours for an attorneys' fee application.  However, such reliance is misplaced since Murray was a "routine § 1983 case" which settled just over two months after commencement of the action.[15]  Id. at 233,

---

[13] As further evidence of the success and impact of this litigation, the EEOC is investigating Wal-Mart's violations of the Consent Decree based on the evidence in this case.  Wigdor Reply Aff. Ex. G.

[14] In addition, contrary to Defendants' claims, it is obvious that Plaintiff's counsel was required to turn away other work in order to expend the necessary time and effort on this case and that litigating against Defendants with Wal-Mart's resources was undesirable, as evidenced by the initial referral of this matter to TWG from another attorney reluctant to accept the case.  Wigdor Reply Aff. ¶ 6.

[15] In addition, the attorney in Murray did not submit any contemporaneous billing records and was a solo practitioner with, at most, five years experience in litigation who was only admitted to federal court practice in the year prior to the proceedings at issue.  Id. at 235-37.

236. Plaintiff is therefore entitled to recover his "fees on fees."

## IV.   PLAINTIFF'S COSTS SHOULD NOT BE REDUCED

Defendants argue that Plaintiff should not be entitled to recover certain costs. First, Plaintiff may recover his expenses for his economic expert since these costs were necessarily incurred as part of Plaintiff's trial preparation because Defendants' motion *in limine* to exclude evidence of Plaintiff's front pay claims was denied prior to the trial of this matter and the issue of front pay remained unresolved until after the trial when the Court denied Plaintiff's front pay claims in its June 22, 2005 Memorandum and Order. Wigdor Reply Aff. Ex. F. Plaintiff was therefore required to prepare for this claim and should be reimbursed for the attendant expense. Second, the overnight delivery costs incurred by Plaintiff were reasonable given that it is routine to send packages to attorneys that require their attention on weekends and vacations. Third, Plaintiff's costs for copying are supported by invoices when an outside vendor was used (Wigdor Aff. Ex. C; Wigdor Reply Aff. Ex. B) and a reasonable rate was charged for copying done internally. Wigdor Aff. Ex. H. Plaintiff is therefore entitled to recover these costs.

## V.   PLAINTIFF IS ENTITLED TO PRE- AND POST-JUDGMENT INTEREST

Despite Defendants' claim that Plaintiff is not entitled to pre- and post-judgment interest on the damages awarded to him, Def. Mem. p. 24, Defendants have failed to distinguish the authorities cited by Plaintiff in support of the requested award of interest, Pl. Mem. p. 24-25. Even the authority relied on by Defendants to dispute Plaintiff's entitlement to pre-judgment interest, in fact also supports an award of post-judgment interest on "all amounts awarded from [the date judgment was entered] to the date the judgment is satisfied." Meacham v. Knolls Atomic Power Laboratory, 185 F.Supp.2d 193, 238 (N.D.N.Y. 2002).

10

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion and enter an Order: (1) awarding attorneys' fees in the sum of $884,647.00; (2) granting an appropriate upward adjustment on the attorneys' fees awarded; (3) awarding costs in the sum of $44,715.25; (4) amending the judgment so as to reflect these attorneys' fees, costs and pre-and post-judgment interest; and (5) granting such other and further relief as the Court deems proper.

Dated: New York, New York
   September 1, 2005

Respectfully submitted,

**THOMPSON WIGDOR & GILLY LLP**

By:    Douglas H. Wigdor (DW-9737)
     Michelle M. le Roux (ML-2773)

Empire State Building
350 Fifth Avenue, Suite 5720
New York, New York 10118-0110
Tel.: (212) 239-9292
Fax: (212) 239-9001

Counsel for Plaintiff

11