**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
PATRICK S. BRADY,

                    Plaintiff,                        **MEMORANDUM**
                                                          **AND ORDER**

           - against -
                                                 03-CV-3843 (JO)

WAL-MART STORES, INC., et al.,
                      Defendants.
---------------------------------------------------------X

**JAMES ORENSTEIN, Magistrate Judge:**

      Plaintiff Patrick S. Brady ("Brady") seeks an award of attorneys' fees arising from his litigation of an appeal before the United States Court of Appeals for the Second Circuit, as well as post-judgment interest on the fee award and on attorneys' fees previously awarded in this court. For the reasons set forth below, I award a total of $109,804.67 in supplemental attorneys' fees, including $14,130.00 for the period of April 26, 2006 through November 30, 2006, and $95,674.57 for the period of December 1, 2006, through August 25, 2008. I further award Brady post-judgment interest on the supplemental fee award (but not on the original award of attorneys' fees) at an annual rate of 3.39 percent, payable as of the date of judgment, June 23, 2005, for a total of $19,917.28 through the date of this order, and an additional $10.20 per day thereafter until the award is paid.

I.    <u>Background</u>

      Brady filed this discrimination action against his former employer, Wal-Mart Stores, Inc. ("Wal-Mart"), and two of its managers, alleging violations of the Americans with Disabilities Act ("ADA"), 29 U.S.C. ' 12101, *et seq*. and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law ' 290, *et seq*. Docket Entry ("DE") 33 (Amended Complaint). Following a trial, and on the basis of the jury's verdict (which absolved one of the managers of any liability), I

1

directed the Clerk to enter judgment in favor of Brady jointly and severally against Wal-Mart

and against manager Yem Hung Chin ("Chin") in the amount of $2,500,000, and against Wal-

Mart alone in the additional amount of $300,002.  *See* DE 111.

In extensive post-trial litigation, Wal-Mart and Chin sought judgment in their favor as a

matter of law as well as a new trial, or in the alternative for remittitur of compensatory damages.

DE 120; DE 122; *see* Fed. R. Civ. P. 50(b), 59(a).  Brady also sought relief in the form of an

application for costs, including attorneys' fees.  DE 115; *see* Fed. R. Civ. P. 54(d).  On

September 29, 2006, I denied the defendants' motions,[1] and awarded Brady a total of

$644,145.22 in costs including reasonable attorneys' fees.  *See Brady v. Wal-Mart Stores, Inc.*,

455 F. Supp. 2d 157 (E.D.N.Y. 2006) ("*Brady I*").  Wal-Mart timely appealed my decision on

November 29, 2006.  DE 172.  The United States Court of Appeals for the Second Circuit

affirmed the decision on July 2, 2008.  *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127 (2d Cir.

2008) ("*Brady II*").

On July 16, 2008, Brady asked the appellate court to award him additional attorneys' fees

relating to litigation in two separate periods:  post-trial litigation from the submission of his

original fee application in this court through the filing of Wal-Mart's notice of appeal, from April

25, 2006 through November 30, 2006; and litigation of the appeal, beginning on December 1,

2006.[2]  Brady also requested an increase in the amount of fees and costs I had previously

---

[1]  I conditioned the denial of a new trial on Brady's acceptance of remittitur of his compensatory
damages award to $600,000.  Brady elected to accept that result on October 30, 2006.  DE 171.

[2]  Brady initially sought fees for appellate work up until he filed his motion.  In doing so,
however, he also requested an award of fees for any work his counsel would perform later in the
event Wal-Mart opposed the motion.  Because Wal-Mart did indeed oppose the motion, the
scope of Brady's request includes work his counsel did up until August 25, 2008, when he
submitted a reply brief on the motion that also included supplemental fee information.

awarded, as well as post-judgment interest on that award.  *See* DE 178; Plaintiff-Appellee's
Motion for Attorneys' Fees ("Motion") at 1.[3]  The appellate court denied Brady's motion to
increase the original award in this court, held that Brady is entitled to an award of fees for the
appellate litigation, and remanded the matter to this court for a determination of the appropriate
amount of such fees as well as a determination in the first instance concerning post-judgment
interest.  DE 179.[4]

II.     Discussion

        Courts in this circuit assess fee applications using the "lodestar method," under which a
reasonable hourly rate is multiplied by a reasonable number of hours expended.  *See Luciano v.*

---

[3]  Brady's motion, as well as the supporting Declaration of Douglas Wigdor in Support of
Plaintiff-Appellee's Motion for Attorneys' Fees ("Wigdor Dec."), Wal-Mart's Memorandum in
Opposition to Plaintiff Appellee's Motion for Attorneys' Fees ("Opp."), Brady's Reply
Memorandum in Further Support of Motion for Attorneys' Fees ("Reply"), and the attached
Reply Declaration of Douglas Wigdor in Further Support of Plaintiff-Appellee's Motion for
Attorneys' Fees ("Wigdor Reply Dec.") were all originally filed in the Court of Appeals, and
have never been filed on the docket in this court.

[4]  The appellate court did not explicitly resolve Brady's request for a supplemental award of
attorneys' fees for post-trial litigation in this court, but in addressing more generally Wal-Mart's
objections to the magnitude of Brady's fee requests, it wrote that "the appropriate determination
of the size of attorneys' fees and costs in this case, *even for work done on the appeal*, is best left
to the discretion of the district court to decide in the first instance."  *Id*. at 2 (emphasis added).
Although the statement is ambiguous, I infer from the reference to "work done on the appeal" as
a subset of "the appropriate determination of the size of attorneys' fees and costs in this case" that
should be made in the first instance in this court, that Brady's request for post-trial fees was
remanded as well.  That reading accords with the fact that Brady should have filed his request for
a supplemental award of fees for post-trial litigation in this court – where, as the prevailing party
on a claim under the ADA, he had already established his entitlement to an award of fees arising
from his litigation of the claim.  While "parties should file appeal-related attorney's fee
applications in the circuit court, so that it can determine whether district court assistance is
required," the "determination of a reasonable attorney's fee under the fee-shifting statutes should
normally be decided by the district court in the first instance."  *Dague v. City of Burlington*, 976
F.2d 801, 804 (2d Cir. 1992).  There is no reason Brady should be denied an award of fees for
post-trial litigation in this court:  such litigation in response to Wal-Mart's efforts to undo the
jury's verdict was necessary to preserve, to the extent appropriate, the result he achieved at trial.

*Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 166 (E.D.N.Y. 2004) (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004); *Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)).[5]  District courts have broad discretion, using "'their experience with the case, as well as their experience with the practice of law, to assess the reasonableness'" of each component of a fee award.  *Fox Indus., Inc. v. Gurovich*, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)).  I therefore examine the reasonableness of both the hourly rates claimed by Brady's attorneys and the number of hours of work they billed in this litigation.

     A.    <u>Hourly Rate</u>

     Because a client who can recover attorneys' fees through a fee shifting statute has little incentive to negotiate rates with his attorney prior to litigation, "the district court must act later to ensure that the attorney does not recoup fees that the market would not otherwise bear."  *Arbor Hill*, 522 F.3d at 184.   The district court "bears the burden of disciplining the market" and setting a "reasonable hourly rate" for the services of counsel.  A reasonable hourly rate is the rate a "reasonable, paying client" would be willing to pay.  *Id.*; *see also McDaniel v. County of Schenectady*, 595 F.3d 411, 420 (2d Cir. 2010) (a presumptively reasonable fee represents an approximation of "what a competitive market would bear"); *Manzo v. Sovereign Motor Cars, Ltd.*, 2010 WL 1930237, at *7 (E.D.N.Y. May 11, 2010) (a presumptively reasonable fee "boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively") (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks omitted)).  The court may "rely

---

[5]  I use the term "lodestar" only for ease of reference.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 n.4 (2d Cir. 2008).

on [the court's] own knowledge of comparable rates" charged by lawyers in the community, *Morris v. Eversley*, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004) (citing *Ramirez v. New York City Off-Track Betting Corp.*, 1997 WL 160369, at *2 (S.D.N.Y. Apr. 3, 1997)), "as well as on evidence submitted by the parties." *Stirrat v. Ace Audio/Visual, Inc.*, 2007 WL 2229993, at *2 (E.D.N.Y. July 31, 2007) (citing *Farbotko v. Clinton County of New York*, 433 F.3d 204, 209 (2d Cir. 2005)). "[T]he burden is on the fee applicant to produce satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

The relevant legal "community" is generally the district in which the court is located. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *Coated Fabrics Co. v. Mirle Corp.*, 2008 WL 163598, at *7 (E.D.N.Y. Jan. 16, 2008). As a result, I look to the rates prevailing in the Eastern District of New York, notwithstanding the fact that all parties in this case engaged – and Wal-Mart was manifestly willing to pay – attorneys from the Southern District of New York.

In asking the appellate court to increase the fees I had already awarded, Brady contended that the later decision in *Arbor Hill* demonstrated the error of my reliance on the Eastern District of New York as the relevant community for determining fees. Motion at 18-20. The court rejected that argument and held that applying the prevailing rates in this district was consistent with *Arbor Hill*. DE 179 at 1-2. Since that decision, the applicable law has developed further, *see*, *e.g.*, *Simmons*, 575 F.3d 170, and I therefore take a fresh look at the appropriate geographical area to be considered in determining a reasonable hourly rate.

While a court "may use an out-of-district hourly rate – or some rate in between the out-of-district rate sought and the rates charged by local attorneys ... if it is clear that a reasonable,

paying client would have paid those higher rates[,]" it is presumed "that a reasonable, paying client would in most cases hire counsel whose rates are consistent with those charged locally." *Arbor Hill*, 522 F.3d at 191 (2d Cir. 2008).  In order to overcome that presumption, Brady must establish "that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result."  *Simmons*, 575 F.3d at 175.  Meeting that burden requires Brady to

> make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result....  Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, [*In re "Agent Orange" Prod. Liab. Litig.*], 818 F.2d [226,] 232 [(2d Cir. 1987)], or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise.

*Id*. at 176; *see also id*. at 177 ("The [defendant] should not be required to pay for a limousine when a sedan could have done the job."); *Vilkhu v. City of New York*, 372 F. App'x 222, 224 (2d Cir. 2010).[6]

---

[6]  As a result of *Simmons*, plaintiffs asserting civil rights claims for which venue may properly be laid in the Southern District of New York are presumptively – and uniquely – deemed to be in need of, and therefore entitled to, the legal equivalent of a limousine, while their neighbors whose cases are properly litigated in this district must endure a more Spartan existence.  Even assuming that the costs of law practice are higher in Manhattan than in the surrounding counties, it is hardly apparent that plaintiffs in urban and suburban counties such as Queens and Nassau, respectively, would have litigation needs that are presumptively easier and less costly to meet than those in comparable areas such as the Bronx and Sullivan County.  Nor is it apparent why Brady himself, had he commuted to a job at the Wal-Mart store in White Plains and had suffered the same discrimination, would have been entitled to have his attorneys receive a higher fee for combating it there as they did here.  Nevertheless, I recognize that *Simmons* compels such disparities.  *See Luca v. County of Nassau*, 698 F. Supp. 2d 296, 300 (E.D.N.Y. 2010); *Gutman v. Klein*, 2009 WL 3296072, at *2 n.1 (E.D.N.Y. Oct. 13, 2009) (anticipating the day when "the concept of a geographically-based as opposed to case complexity-based lodestar will someday have as much relevance to the selection of an attorney as dinosaurs have to birds").

The district court may adjust the hourly rate to account for "case-specific variables" relevant to evaluating the market rate for comparable legal services, bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.  Factors to consider include, but are not limited to, the attorney's customary hourly rate, the complexity and difficulty of the case, the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side), the experience, reputation and ability of the attorneys, the preclusion of employment by the attorney due to acceptance of the case, and the different rates prevalent in different practice areas, among other considerations.  *Id.* at 184 & n.2, 187 n.3; *see also Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (listing twelve factors to be considered by courts in determining the rate a reasonable client would be willing to pay).[7]  The size of the firm may also be considered, in part because of the varying overhead costs incurred by larger firms, but also where the complexity of a case requires a larger firm to effectively litigate it, or where, because of its small size, a firm is forced to forego opportunities to represent clients in other matters that a larger firm would be able to handle.  *See Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059 (2d Cir. 1989); *Simmonds v. New York City Dept. of Corrections*, 2008 WL 4303474, at *2 (S.D.N.Y. Sept. 16, 2008); *Murray ex rel. Murray v.*

---

[7]  Those factors include (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal services properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the "undesireability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *Id.*

7

*Mills*, 354 F. Supp. 2d 231, 236 (E.D.N.Y. 2005) (noting that hourly rates tend to be higher at large firms to compensate for higher overhead costs); *Brady I*, 455 F. Supp. 2d at 206-07.[8]

Brady seeks to have his attorneys reimbursed at the following hourly rates:  $500-$600 for Douglas H. Wigdor ("Wigdor"), a partner in the law firm of Thompson Wigdor & Gilly LLP ("TWG") with 15 years of experience in practice at the time the appeal concluded; the same for TWG partner Scott Gilly ("Gilly") and associate Andrew S. Goodstadt ("Goodstadt"), who have 15 and 10 years' experience, respectively; $250 to $390 for TWG associates Michelle Le Roux ("Le Roux") (six years in practice), Jihee G. Suh  ("Suh") (five years), Ariel Y. Graff ("Graff") (one year), Renan F. Varghese ("Varghese") (less than one year), and Cindy Uh ("Uh") (less than one year); and $125-$140 for the work of paralegal assistants Joshua Drian ("Drian"), George Vallas ("Vallas"), Jillian Howell ("Howell"), and Patrick J. Scanlan ("Scanlan").  Motion at 4-5; Wigdor Dec. at 19-27; Wigdor Reply Dec. Ex. B.[9]  I have previously determined reasonable hourly rates for some of the attorneys for their work in this case up to the time of the initial fee award; specifically, I based the prior award on hourly rates of $350 for Wigdor and Gilly, $225 for Goodstadt, $200 for Le Roux, $150 for Varghese, and $100 for each paralegal assistant. *Brady I*, 455 F. Supp. 2d at 208.

---

[8]  Although the Supreme Court has criticized as overly subjective the practice of adjusting an overall fee on the basis of the kinds of factors mentioned above, it remains appropriate under the law of this circuit to take such factors into account in determining the hourly rate at which an attorney may be compensated.  Although there may ultimately be no difference between a fee awarded on the basis of a lodestar subject to adjustment and one determined by adjusting the hourly rate before calculating the lodestar, the latter approach is better suited to the goal of mimicking the market.  *See McDaniel*, 595 F.3d at 422; *Jin v. Pacific Buffet House, Inc.*, 2010 WL 2653334, at *2 (E.D.N.Y. June 25, 2010).

[9] Where Brady's submissions do not specify the number of years an attorney had been admitted to practice at the time appellate proceedings concluded on August 25, 2008, I take judicial notice of the pertinent information available from New York State's attorney registration database.  *See* Attorney Directory – Attorney Search, http://iapps.courts.state.ny.us/attorney/AttorneySearch.

Brady urges me to consider several factors as justifying the rates his attorneys claim:  he points to their expertise and the skill required to defend the appeal; the rates they command from paying clients; Wal-Mart's resources and those required in response; the results they obtained; the "undesirability" of this case; and the opportunity cost arising from the fact that TWG's relatively small size precluded it from litigating other matters while engaged in this action.[10] Motion at 10-16.  Even taking all of those factors into account, the hourly rates Brady's attorneys claim are far higher than those that prevail in this district under comparable circumstances.

The market rate for civil rights litigation services is lower than that for some other areas of practice, particularly those involving more affluent corporate clients.  *Morris v. Eversley*, 343 F. Supp. 2d 234, 247 (S.D.N.Y. 2004) (noting that "markets and billing conditions are different" between civil rights and corporate practice, and that rates charged by large firms "exceed the rates usually charged by similarly experienced civil rights attorneys"); *Heng Chan v. Sung Yue Tung Corp*, 2007 WL 1373118, at *3 (S.D.N.Y. May 8, 2007); *Pastre v. Weber*, 800 F. Supp. 1120, 1125 (S.D.N.Y. 1991) (counsel at large firm entitled to the rates that "would have been charged by a competent attorney specializing in civil rights litigation" rather than the rates paid by corporate clients).  Thus, while I have no doubt that Brady's attorneys can command hourly rates as high as $750 from some paying clients, *see* Wigdor Dec. Ex. B (providing examples), that fact does not require Wal-Mart to pay such rates in the circumstances of this case.

For exceptionally difficult and complex civil rights cases, a relatively high hourly rate may be appropriate.  *See Heng Chan*, 2007 WL 1373118, at *3 (awarding $450 an hour, at the high end of the prevailing market rate for civil rights litigation).  In the average case, however,

---

[10] TWG now employs fourteen attorneys and four paralegal assistants.  Attorneys – Thompson Wigdor & Gilly LLP, http://www.twglawyers.com/attorneys.html (visited October 29, 2010).

rates are lower. *See Simmonds v. New York City Dept. of Corrections*, 2008 WL 4303474, at *5 (S.D.N.Y. Sept. 16, 2008) (refusing to apply rates that would be appropriate for "extraordinarily complex, class action lawsuits requiring an enormous investment of time and resources"; awarding $225 to $425 for attorneys with 4 to 22 years experience for case that "involved a single plaintiff asserting several novel theories of liability alongside a compelling traditional gender discrimination claim[.]").  This case, involving a single plaintiff and two defendants, and a traditional disability discrimination claim, was not "extraordinarily complex" and does not merit an increased rate.  See *Brady I*, 455 F. Supp. 2d at 211 (case not "inherently more novel or complex than a standard discrimination claim").

While I do take into consideration the expertise of several of Brady's counsel when determining the reasonable rate for their services below, the remaining factors Brady cites do not affect my analysis of the reasonable hourly rate.  Though Wal-Mart was certainly capable of mounting a strong defense and necessitating a correspondingly elevated level of work by Brady's counsel, I take this factor into consideration when determining the reasonable number of hours for which Brady seeks to be reimbursed.  Brady's success on appeal is also taken into consideration in determining the reasonable number of hours.  While I do not doubt that TWG, because of its relatively small size, was precluded from litigating other matters during the pendency of this lawsuit, *see Brady I*, 455 F. Supp. 2d at 210, n.23, I note that such a disability would occur for other firms of similar size, the typical rates of which I take into account. Additionally, I note that because of its limited capacity TWG, had an incentive to work efficiently on this case, and I credit that fact when considering the reasonableness of the number of hours for which the firm seeks compensation.  *Id.*  Finally, Brady has not convinced me of the "undesirability" of the case and I see no reason to award a higher fee based on that factor.

10

Fee awards in this district in recent years have approved hourly rates in the range of $200 to $400 for partners, $100 to $295 for associates, and $70-$100 for paralegal assistants. *See, e.g.*, *Luca v. County of Nassau*, 698 F. Supp. 2d 296, 303-306 (E.D.N.Y. 2010); *Melnick v. Press*, 2009 WL 2824586, at *9 (E.D.N.Y. Aug. 28, 2009) (reviewing cases); *Gutman v. Klein*, 2009 WL 3296072, at *3 (E.D.N.Y. Oct. 13, 2009); *Lochren v. County of Suffolk*, 2010 WL 1207418, at *3 (E.D.N.Y. Mar. 23, 2010); *Coated Fabrics Co. v. Mirle Corp.*, 2008 WL 163598, at *7-*8 (E.D.N.Y. Jan. 16, 2008) (collecting cases); *Ueno v. Napolitano*, 2007 WL 1395517, at *9 (E.D.N.Y. May 11, 2007); *Cho v. Koam Medical Services P.C.*, 524 F. Supp. 2d 202, 207 & n.4 (E.D.N.Y. 2007) (collecting cases). While fee awards in this district have in some cases approved higher hourly rates, the attorneys being compensated in such cases had exceptional qualifications and experience, a circumstance not present here. *See, e.g.*, *Ueno*, 2007 WL 1395517, at *10 ($450 for partner with 42 years experience who served as legal director of the Anti-Discrimination Center; $400 for partner with 21 years experience who was a law professor at Fordham Law School, had helped draft the 1991 revision of the New York Human Rights Law, and who had founded the Anti-Discrimination Center; $350 for sole practitioner focusing on constitutional violations and employment discrimination with 29 years experience); *Lochren*, 2010 WL 1207418, at *3 ($450 for partner with 40 years experience). Considering these prevailing rates and all the circumstances of this case, I approve the following hourly rates:

11

| Name | Position | Experience | Hourly Rate | |
| | | | Claimed | Adjusted |
|------|----------|------------|---------|----------|
| Wigdor | Partner | 15 years | $500-$600 | $375 |
| Gilly | Partner | 15 years | $500-$600 | $375 |
| Goodstadt | Associate | 10 years | $550 | $275 |
| Le Roux | Associate | 6 years | $350-$375 | $225 |
| Suh | Associate | 5 years | $385 | $225 |
| Graff | Associate | 1 year | $280-$310 | $175 |
| Varghese | Associate | Less than 1 year | $250-$310 | $175 |
| Uh | Associate | Less than 1 year | $290 | $175 |
| Drian | Paralegal | Not provided | $135-$140 | $100 |
| Vallas | Paralegal | Not provided | $135-$140 | $100 |
| Howell | Paralegal | Not provided | $125 | $100 |
| Scanlan | Paralegal | Not provided | $140 | $100 |

In several instances, the rates I apply here are higher than the rates I used for the same attorneys when making my original award in 2006. I apply such higher rates to compensate for the delay in the reimbursement by awarding fees at the rates I believe to be appropriate today rather than using historical rates. *See*, *e.g.*, *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Reiter v. MTA New York City Transit Auth.*, 457 F.3d 224, 232-33 (2d Cir. 2006).

B.   Number Of Hours

A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates. *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). District courts have broad discretion to determine the reasonableness of hours claimed based on their general experience and "familiarity with the case," *Murray*, 354 F. Supp. 2d at 238. To ensure a reasonable fee award, I must review the claimed hours and eliminate those that I find to be

12

"excessive, redundant, or otherwise unnecessary." *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983). In so doing, I am guided by the admonition that "[e]fforts put into ... the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns." *Murray*, 354 F. Supp. 2d at 238 (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir. 1985)).

Practical methods for "trimming fat" from an excessive fee application include "across-the board percentage cuts[,]" *In re "Agent Orange"*, 818 F.2d at 237-38, which can be applied to specific attorneys, or to specific stages of the litigation. *See, e.g.*, *Levy*, 2005 WL 1719972, at *8-*9; *Murray*, 354 F. Supp.2d at 238-41. Inadequate documentation is grounds for reduction of a fee award. *Hensley*, 461 U.S. at 433; *Levy*, 2005 WL 1719972, at *7. Likewise, a reduction may be appropriate where a prevailing plaintiff is unsuccessful on certain claims. However, if the plaintiff's claims all share "a common core of facts or [are] based on related legal theories," the litigation should be viewed as a whole and a reduction should not be made. *Hensley*, 461 U.S. at 434-35; *Pinner v. Budget Mortgage Bankers, Ltd.*, 336 F. Supp. 2d 217, 221-22 (E.D.N.Y. 2004).

### 1.   District Court Motion Practice

Brady's counsel seek compensation for 50.7 hours of work in post-trial litigation in the district court. That litigation included defending against Wal-Mart's extensive motions for judgment as a matter of law and for a new trial, pursuing a fee request over Wal-Mart's vigorous objections, deciding whether to accept remittitur, and preparing for Wal-Mart's anticipated appeal. Wal-Mart raises no objection to the number of hours billed for those tasks, Opp. at 17, and I agree that they appear to be within a reasonable range under the circumstances of this case. In particular, although the bulk of the hours billed during this period were spent researching the

13

issue of remittitur and deciding whether to accept the reduction I had proposed, I note that my analysis of the issue included a lengthy attempt to harmonize two disparate strands of applicable law, and that the damages award I proposed was almost two million dollars less than the amount the jury had deemed appropriate.  In that context, the significant amount of time that Brady's counsel devoted to studying the issue and determining their legal strategy is understandable, even if a similar amount of time for such tasks might well be unreasonable in other circumstances.  I therefore make no reduction of the claimed hours with respect to post-trial litigation in this court.

2.    Appellate Work

Brady's counsel billed a total of 565.4 hours during the pendency of the appeal from December 1, 2006 to August 25, 2008.  *See* Motion at 3; Wigdor Reply Dec. Ex. B.[11]  As Wal-Mart notes in objecting to the proposed fee, that time includes 180 hours for drafting the appellate brief, three hours preparing for testimony before Congress while the appeal was pending, 169.7 hours for preparing for oral argument, 163.8 hours for preparing the application for appellate fees (105 hours on the initial application and 58.8 hours on the reply brief), and the remainder (or 48.9 hours) for administrative tasks.  Opp. at 12-15; Reply, Ex. A. [12]  Wal-Mart

---

[11] In what appears to be a scrivener's error, the table Brady submitted with his reply brief in support of the fee application omits from the total number of hours the time spent working on the reply.  *Compare* Motion at 3 (claiming a total of 274.7 hours worked in 2008, and a total of 506.6 hours for the appeal) *with* Wigdor Reply Dec. Ex. B (same, despite a total of 58.8 hours of additional time claimed by Wigdor, Graff, and Scanlan) *and id*. Ex. A (billing records relating to reply brief, summarizing 58.8 hours billed by Wigdor, Graff, and Scanlan).  I base my decision on the totals claimed, correcting for that error, and on the assumption that Wal-Mart objects for the same reasons set forth in its papers to the amount of time devoted to the reply brief on the fee application.

[12] With the exception of the 58.8 hours spent on the reply brief, these figures are taken from Wal-Mart's opposition brief, which Brady did not dispute, and which my own review substantially confirms.  *See* Opp. 12-15.

raises no objection as to the latter component of the application, Opp. at 12, but contests the first four.

I consider each portion of the application individually, but note at the outset that the total amount is substantially greater than the numbers of hours found to be excessive in prior cases in this circuit. *See*, *e.g.*, *LaBarbera v. J.E.T. Resources, Inc.*, 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (finding 300 hours of work on appeal "totally unnecessary and excessive" where appeal was "simple and straightforward" and solely related to the denial of a motion for attorneys' fees; awarding only half of the hours claimed); *cf. Eames v. Shalala*, 1994 WL 520972, at *3-*4 (W.D.N.Y. 1994) (remarking that "at first glance ... 107.7 hours appears to be a reasonable amount of time" for "researching and drafting the main brief and the reply papers, conferring, settling the record on appeal, preparing for and arguing before the appellate court, traveling, preparing the instant fee application, etc." but reducing the number of hours because the majority of that time was spent litigating a fee dispute rather than substantive issues); *Wilson v. Aquino*, 2009 WL 185729, at *1 (N.D.N.Y. Jan. 23, 2009) (59.1 hours of legal work reasonable to defend appeal); *Garden State Auto Park Pontiac GMC Truck, Inc. v. Electronic Data Sys. Corp.*, 31 F. Supp. 2d 378, 385-86 (D.N.J. 1998) (finding it reasonable to spend 241.4 hours total – including fewer than 24 hours researching, drafting and filing brief – on an appeal that involved an extensive appellate brief containing a "myriad of issues" as well as preparation for and attendance at mediation prior to the disposition of the appeal).

a.    The Appellate Brief

Wal-Mart is correct that the issues discussed in the appellate brief were "primarily briefed in the court below," and involved subjects on which Brady's counsel "consider themselves experts in the field." Opp. at 13-14 (citing *Glassroth v. Moore*, 347 F.3d 916, 919-20 (11th Cir.

15

2003) (remanding fee application with instruction to district court to consider counsel's expertise in relevant area); *Miller v. Alamo*, 983 F.2d 856, 861 (8th Cir. 1993) (reducing hours claimed by nearly half because research for legal issues raised on appeal had already been done to prepare for proceedings in district court)).  However, Brady is also correct to point out that his counsel had an obligation not to "merely recycl[e] the substance of prior motions without taking care to rigorously review familiar cases, conduct research on more recent cases, and attempt to reformulate and perfect the arguments ...."  Reply at 9.  Moreover, as I have already noted, Wal-Mart was a "formidable opponent" in this case with "considerable assets at its disposal[,]" *Brady I*, 455 F. Supp. 2d at 211 (citation omitted), and its vigorous defense of the case did not cease at the appellate phase:  Wal-Mart raised seven appellate issues, including one of first impression in this circuit.  *See Brady II*, 531 F.3d at 133, 135-36.  Under such circumstances, Brady's counsel was plainly justified in devoting significant effort to the appellate brief.

Nevertheless, the 180 hours Brady claims for preparing a single appellate brief is excessive.  *See WATCH v. Harris*, 535 F. Supp. 9, 16 (D. Conn. 1981) (125 hours researching and drafting appellate documents excessive; reducing fee by 30%); *but see Garden State Auto Park*, 31 F. Supp. 2d at 385-86 (241 hours researching, drafting and filing brief was reasonable). Earlier in this litigation, I found 200 hours to be an unreasonable amount of time to spend opposing Wal-Mart's motion for summary judgment, and made a reduction in the number of hours by ten percent.  *Brady I*, 455 F. Supp. 2d at 212.  Notwithstanding Wal-Mart's contention that should I reduce the number of hours claimed "by at least" half, Opp. at 14, I will do the same here, reducing the number of hours from 180 to 162.

16

b.      Oral Argument

Brady's counsel billed a total of 169.7 hours for preparing for oral argument.  Even taking

into account the voluminous record on appeal and the number of appellate issues, that amount of

time is excessive.  *See*, *e.g.*, *Green-Younger v. Barnhart*, 2004 WL 2377224, at *6 (D. Conn.

Sept. 30, 2004) (27.8 hours reasonable amount of time to prepare to argue appeal of

Administrative Law Judge decision before Second Circuit); *Luessenhop v. Clinton County, N.Y.*,

558 F. Supp. 2d 247, 270 (N.D.N.Y. 2008) (28 hours to prepare for Second Circuit argument

"excessive").  Wal-Mart suggest these hours should be reduced by at least half.  I will reduce the

claim by slightly more than one-third, to 100 hours.[13]

c.      The Fee Application

Brady's counsel appears to have spent a total of 163.8 hours on the appellate fee

application, including 105 hours on the initial application and 58.8 hours on the reply brief.  Opp.

at 12;[14] Reply Ex. A.  I have previously reduced Brady's application for fees at the trial level by

half, on the ground that the 257 hours claimed was excessive, *Brady I*, 455 F. Supp. 2d at 212,

and I largely agree with Wal-Mart that a similar reduction is warranted here.  *See*  Opp. at 15.

Some of the time Brady's counsel reasonably spent on the initial application was devoted to

responding to Wal-Mart's "surprisingly vigorous" objections – a resistance that included even an

objection to my request for information to help me decide the issue.  *Brady I*, 455 F. Supp. 2d at

---

[13] Wal-Mart's counsel, an appellate specialist, spent 96.9 hours preparing for oral argument.
Opp. at 15 n.7.  While that attorney undoubtedly needed some time to get up to speed on matters
with which Brady's counsel was already familiar, it is hardly excessive for one party to spend
roughly the same amount of time on  given task as its adversary.

[14] Wal-Mart variously describes the time billed for the initial fee application as "approximately
105 hours" and "more than 105 hours[.]"  Opp. at 13, 15.  I accept 105 hours as a sufficiently
precise measure of this portion of the fee application.

212.  Wal-Mart's response to the instant application has not been comparable:  it has simply

contested the hourly rates and hours worked that Brady's lawyers claimed without needlessly

complicating the litigation.  I also note that Brady's briefing of the fee application – including

both an initial memorandum and a reply – amounted to no more than 31 pages.  *Cf. Big R Food*

*Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 299 (E.D.N.Y. 1995) (reducing claim for

hours devoted to fee application from 20 to 12 where counsel wrote two briefs with a total of

eight pages).  In light of the relatively straightforward nature of the instant fee application, I

conclude that the hours claimed for preparing it are grossly excessive.  *Compare Mid Hudson*

*Legal Serv. v. G & U, Inc.*, 465 F. Supp. 261, 273 (S.D.N.Y. 1978) (crediting over 200 hours for

fee application due to "novelty, complexity and importance of the underlying issues") *with*

*Murray*, 354 F. Supp. 2d at 241 (noting that even in a complex case a fee application should take

only about 30 hours); *see also Levy*, 2005 WL 1719972, at *8 (justifying an across-the-board 35

percent reduction in part on the 101.3 hours billed for the fee application).  Accordingly I reduce

the hours claimed for the initial application by roughly half, from 105 to 52.5.[15]  And while Wal-

Mart would have me deny any fees for the reply, Opp. at 15 n.8, I will not go that far.  Although

the amount of time billed for that reply – almost 60 hours – is grossly excessive; it would have

---

[15]  Brady dedicated a considerable portion of the appellate fee application to an unsuccessful
effort to persuade the appellate court to increase the original fee award for his counsel's work
before and during the trial.   Motion at 3-5, 8-16, 18-20.   While I have the discretion to reduce
the hours claimed on the ground that some of those hours are attributable to such an unsuccessful
effort, *see Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992), I do not reduce the hours on that
basis.   The argument was unsuccessful, but it was also predicated largely on the same facts and
legal arguments as the instant request for appellate fees, and therefore was not appreciably
duplicative.  *See Hensley*, 461 U.S. at 435 ("claims for relief ... involv[ing] a common core of
facts or based on related legal theories ... cannot be viewed as a series of discrete claims");
*Barfield v. New York City Health and Hospitals Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ("[a]
district court's assessment of the 'degree of success' achieved in a case is not limited to inquiring
whether a plaintiff prevailed on individual claims").

18

been irresponsible for Brady's counsel to make no response at all.  I will credit an additional ten

hours for the reply brief, resulting in a total of 62.5 hours for the overall fee application.

>           d.        Congressional Testimony

Wal-Mart objects to three hours that counsel billed in conjunction with Brady's testimony

before the Committee on the Judiciary of the United States House of Representatives.  See Opp.

at 14; Wigdor Dec. Ex. A, Billing Entries of June 19 & 20, 2007.   I agree that Wal-Mart should

not be required to reimburse Brady for these hours.

>           e.        Administrative Tasks

Brady's counsel appears to have billed a total of 48.9 hours for administrative tasks

during the pendency of the appeal.  See Opp. 12-13.[16]  Wal-Mart does not object to this portion

of the fee application, and I approve it as reasonable.

>     C.        Award

I have reduced the hourly rates claimed by Brady's attorneys with respect to both

components of his fee request, and have reduced the number of hours billed as to the appellate

work.  In implementing the latter determination, I have rejected as unduly complicated the task

of reducing or eliminating specific time entries.  Instead, I have made an across-the-board

percentage reduction for each attorney's billed hours for the entire appellate period.  That is,

having determined that the total number of compensable hours for the appeal is 373.4 (162 hours

for the appellate brief, 100 hours preparing for oral argument, 52.5 hours for the initial fee

application, 10 hours for the reply brief, and 48.9 for administrative tasks), I calculate that the

---

[16]  I calculate the amount spent on administrative tasks by starting with the total of 506.6 hours
claimed for the appeal in Brady's initial application and subtracting the other components
described above (180 hours for the appellate brief, three hours for preparing congressional
testimony, 169.7 hours for preparing for oral argument, and 105 hours for the initial fee
application).  See Opp. at 12-15.

total represents roughly 66% of the 565.4 hours Brady's counsel claimed for that entire period, and therefore reduce the hours claimed by each attorney during that period accordingly. The precise calculations are summarized in the charts in the Appendix to this Memorandum and Order.[17]   Based on the foregoing analysis, I award Brady a total of $109,804.67 as reimbursement of the reasonable attorneys' fees he has incurred in this litigation since the issuance of the prior fee award. The amount awarded includes $14,130.00 for the period of April 26, 2006, through November 30, 2006; and $95,674.67 for the period of December 1, 2006, through August 25, 2008.

### D.   Post-Judgment Interest

Brady seeks post-judgment interest on attorneys' fees. Motion at 1, 18. As a general matter, post-judgment interest is available "on any money judgment in a civil case recovered in a district court[.]" 28 U.S.C. ' 1961. Moreover, post-judgment interest is available for an award of attorneys' fees arising out of a judgment in the district court. *See DB Structured Prods., Inc. v. Baltimore American Mortg. Corp.*, 2009 WL 399746, at *10 (S.D.N.Y. Jan. 23, 2009) (report and recommendation) (a plaintiff is "entitled to post-judgment interest on the award of attorneys' fees [and] costs") (quoting *Gamble v. East Bronx N.A.A.C.P. Day Care Center Inc.*, 2008 WL 2115237, at *3 (S.D.N.Y. May 15, 2008); *Alston v. Wall St. Garage Parking Corp.*, 2004 WL 1194595, at *2 (S.D.N.Y. May 28, 2004)); *rejected on other ground on review by district court*, 2009 WL 948343 (S.D.N.Y. Apr. 7, 2009) (awarding interest on higher underlying amount). However, although the remedy is normally available, I conclude that Brady has forfeited his right to such interest on the fees I awarded prior to the appeal.

---

[17] Some of the numbers in the charts have been rounded for the sake of brevity, but I have used the correct numbers, rather than rounded ones, in all calculations.

Brady did not request an award of post-judgment interest in his first application for attorneys' fees; instead he asked only for post-judgment interest "on the damages awarded to him by the jury." See DE 116 at 24; Memo, Ex. C.  In resolving the post-trial motions, I awarded post-judgment interest on the jury's award of both compensatory and punitive damages, but I did not award such interest on the attorneys' fees. *Brady I* , 455 F. Supp. 2d at 217.  Wal-Mart took an appeal from my order, and Brady did not cross-appeal. *See* DE 172, 176.  In failing to cross-appeal, Brady forfeited his right to challenge the absence of an award of post-judgment interest on the attorneys' fees in the earlier award.

> Generally, "[w]ithout a cross-appeal, an appellee may urge in support of a decree any matter appearing in the record," even if the relief sought is based on grounds ignored by the lower court. *Morley Constr. Co. v. Maryland Casualty Co.,* 300 U.S. 185, 191 (1937) (Cardozo, J.).  What a party may not do, absent a cross-appeal, is "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below." *Id*.

*Burgo v. General Dynamics Corp.*, 122 F.3d 140, 145 (2d Cir. 1997).  Although the forfeiture rule described above "is now viewed as one of practice rather than of jurisdiction, and may therefore in certain circumstances be disregarded," *id.* (citing *Finkielstain v. Seidel,* 857 F.2d 893, 895 (2d Cir. 1988)), here, as in *Burgo*, there is no sufficient reason to justify disregarding it.

Brady has not forfeited the right to seek post-judgment interest on the fees awarded here for his counsel's work relating to post-trial motions in the district court, as he had not previously litigated that request.  Brady is entitled to post-judgment interest on that amount at an annual rate equal to the average rate of return on one-year Treasury-bills for "the calendar week preceding the date of judgment."  28 U.S.C. § 1961(a).

21

Brady seeks an award of interest at an annual rate of 3.39 percent, based on the fact that I used such a rate in calculating post-judgment interest on damages.  Motion at 18.  In doing so, he implicitly seeks to have post-judgment interest calculated as of the date of the judgment (June 23, 2005, *see* DE 112), notwithstanding the fact that the fees were incurred later.  The request produces an anomalous result in the circumstances of this case, but I note that courts in this jurisdiction "routinely adhere to the 'majority rule' that post-judgment interest accrues from the date the party becomes entitled to the award of attorney's fees."  *Moran v. Sasso*, 2009 WL 1940785, at *7 (E.D.N.Y. Jul. 2, 2009) (internal citations omitted).[18]  Moreover, I note that calculating interest as of a later pertinent date – such as the date of my order on the post-trial motions (September 29, 2006), or the date on which Brady's acceptance of remittitur rendered the matter appealable (October 30, 2006) – would result in an even greater recovery for Brady, as the result of increases in the statutory interest rate.[19]  I therefore award post-judgment interest on

---

[18] While the approach I adopt here is consistent with the majority view, "'it is an open question in the Second Circuit whether interest runs from the date of the judgment establishing the right to the award of attorneys fees or form the date of the judgment establishing its quantum.'"  *Kirk v. N.Y. State Dep't of Educ.*, 2009 WL 4280555 (W.D.N.Y. Nov. 24, 2009) (quoting *Albahary v. City and Town of Bristol, Conn.*, 96 F. Supp. 2d 121, 122 (D. Conn. 2000)).

[19] The statutory interest rates as of September 29, 2006, was 4.90 percent; as of October 30, 2006, it was 5.02 percent.  FRB:  H.15 Release – Selected Interest Rates – October 2, 2006, *available at* http://www.federalreserve.gov/releases/h15/20061002/ (visited on October 29, 2010); FRB:  H.15 Release – Selected Interest Rates – October 30, 2006, *available at* http://www.federalreserve.gov/releases/h15/20061030/ (visited on October 29, 2010).  Applying those rates produces the following calculations:

| Starting Date | Period (years) | Rate | Principal | Interest (as of Oct. 29, 2010) | Daily Interest |
|---|---|---|---|---|---|
| June 23, 2005 | 5.351 | 3.39% | $14,130.00 | $2,563.02 | $1.31 |
| Sept. 29, 2006 | 4.082 | 4.90% | $14,130.00 | $2,826.39 | $1.90 |
| Oct. 30, 2006 | 3.997 | 5.07% | $14,130.00 | $2,889.25 | $1.98 |

fees incurred for post-trial litigation in this court at an annual rate of 3.39 percent.  That amount totals $2,563.02 as of today; Brady is also entitled to interest on this amount of $1.31 per day until the award is paid.

Neither party explicitly addresses the issue of the appropriate period and rate to apply in awarding post-judgment interest on appellate attorneys' fees.  *See* Motion at 1, 18; Opp. at 16; Reply at 7; DE 182; DE 185.  I note, however, that Brady's request for post-judgment interest is made pursuant to Section 1961 of Title 28, United States Code, and Federal Rule of Appellate Procedure 37.  As noted above, I interpret Section 1961, consistent with other courts in this circuit, to apply to an award of attorneys' fees.  However, that provision applies only to awards "in a civil case recovered in a district court," 28 U.S.C. § 1961(a); it does not apply to a judgment entered in the United States Court of Appeals for the Second Circuit.  *See id.* § 1961(c)(4).  That limitation does not extinguish Brady's claim for post-judgment interest on appellate fees.  First, the judgment that established his right to recover any fees at all – the judgment in Brady's favor resulting from the jury's verdict – was entered in this court.  Second, the appellate court did not finally resolve the issue of fees in entering judgment on the appeal; instead, it explicitly directed me to "decide in the first instance" the extent to which Brady's counsel should be reimbursed for their work on the appeal.  DE 179 at 2.  As a result, the award of appellate fees will be entered in this court, and post-judgment interest is therefore available pursuant to Section 1961(a).

Having determined that interest is available, I must next determine the starting date from which it should be calculated as well as the appropriate rate.  The only "judgment" entered in this court was that entered on June 23, 2005.  DE 112.  I recognize that the anomalous nature of using that date, as discussed above in connection with the pre-appeal period, is exacerbated in this

23

context:  using the date of district court judgment as the starting point for calculating the interest on appellate fees necessarily allows Brady the windfall of receiving over five years' worth of interest for the reimbursement of expenses that were not incurred until as recently as two years ago.  *See Andrulonis v. United States*, 26 F.3d 1224, 1230 (2d Cir. 1994) ("Postjudgment interest is designed to compensate the plaintiff for the delay it suffers from the time damages are reduced to an enforceable judgment to the time the defendant pays the judgment.") (citing, *inter alia*, *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990)).

Nevertheless, such a result accords with the text of Section 1961 and the majority interpretation of the statute in this district, as set forth above.  It also accords with the rule that "[u]nless the law provides otherwise, if a money judgment in a civil case is affirmed" – as it was here – "whatever interest is allowed by law is payable from the date when the district court's judgment was entered."  Fed. R. App. P. 37; *see also Andrulonis*, 26 F.3d at 1230 (acknowledging that "federal courts do not have a free hand to fashion postjudgment interest awards to fit the equities of a case" because "postjudgment interest in federal court is a creature of statute" and holding that "when the animating principle suggests one result and the statute another, the statute controls") (citing *Kaiser Aluminum*, 494 U.S. at 839; *Magee v. United States Lines, Inc.*, 976 F.2d 821, 823-24 (2d Cir.1992)).

Accordingly, I award post-judgment interest on Brady's counsel's fees for appellate work as of the date of the original judgment in this court, June 23, 2005.  The applicable statutory interest rate for that period is 3.39 percent.  Applying that rate for that period to a principal amount of $95,674.67 yields a total of $17,354.26 though today's date, and an addition amount of $8.89 for each additional day until the award is paid.

III.    <u>Conclusion</u>

For the reasons set forth above, I award plaintiff Patrick Brady a total of $109,804.67 in supplemental attorneys' fees, including $14,130.00 for the period of April 26, 2006 through November 30, 2006, and $95,674.67 for the period of December 1, 2006, through August 25, 2008.  I further award Brady post-judgment interest on the supplemental fee award (but not on the original award of attorneys' fees) at an annual rate of 3.39 percent, payable as of the date of judgment, June 23, 2005, for a total of $19,917.28 through the date of this order, and an additional $10.20 per day thereafter until the award is paid.

**SO ORDERED.**

Dated: Brooklyn, New York
      October 29, 2010

<u>/s/ James Orenstein</u>
JAMES ORENSTEIN
U.S. Magistrate Judge

**APPENDIX:**
**Summaries of fee award calculations**

| District Court Litigation (April 26, 2006, through November 30, 2006) | | | | | | |
|---|---|---|---|---|---|---|
| | Request | | | Award | | |
| Name | Hourly Rate | Hours Worked | Total Fee | Hourly Rate | Hours Worked | Total Fee |
| Wigdor | $500.00 | 14.7 | $7,350.00 | 375 | 14.7 | $5,512.50 |
| Gilly | $500.00 | 5.2 | $2,600.00 | 375 | 5.2 | $1,950.00 |
| Le Roux | $350.00 | 5.1 | $1,785.00 | 225 | 5.1 | $1,147.50 |
| Suh | $385.00 | 23.6 | $9,086.00 | 225 | 23.6 | $5,310.00 |
| Howell | $125.00 | 2.1 | $262.50 | 100 | 2.1 | $210.00 |
| **TOTAL** | **N/A** | **50.7** | **$21,083.50** | **N/A** | **50.7** | **$14,130.00** |

| Appellate Litigation (December 1, 2006, through December 31, 2006) | | | | | | |
|---|---|---|---|---|---|---|
| | Request | | | Award | | |
| Name | Hourly Rate | Hours Worked | Total Fee | Hourly Rate | Hours Worked | Total Fee |
| Wigdor | $500.00 | 6.7 | $3,350.00 | 375 | 4.4 | $1,659.30 |
| Le Roux | $350.00 | 1.4 | $490.00 | 225 | 0.9 | $208.03 |
| Varghese | $250.00 | 0.6 | $150.00 | 175 | 0.4 | $69.34 |
| **TOTAL** | **N/A** | **8.7** | **$3,990.00** | **N/A** | **5.7** | **$1,936.67** |

| Appellate Litigation (January 1, 2007, through December 31, 2007) | | | | | | |
|---|---|---|---|---|---|---|
| | Request | | | Award | | |
| Name | Hourly Rate | Hours Worked | Total Fee | Hourly Rate | Hours Worked | Total Fee |
| Wigdor | $550.00 | 73.5 | $40,425.00 | 375 | 48.5 | $18,202.75 |
| Gilly | $550.00 | 3.0 | $1,650.00 | 375 | 2.0 | $742.97 |
| Le Roux | $375.00 | 0.9 | $337.50 | 225 | 0.6 | $133.73 |
| Graff | $280.00 | 124.3 | $34,804.00 | 175 | 82.1 | $14,365.73 |
| Varghese | $280.00 | 1.3 | $364.00 | 175 | 0.9 | $150.24 |
| Drian | $135.00 | 0.2 | $27.00 | 100 | 0.1 | $13.21 |
| Vallas | $135.00 | 20.0 | $2,700.00 | 100 | 13.2 | $1,320.83 |
| **TOTAL** | **N/A** | **223.2** | **$80,307.50** | **N/A** | **147.4** | **$34,929.48** |

26

| Appellate Litigation (January 1, 2008, through August 25, 2008) | | | | | | |
|---|---|---|---|---|---|---|
| | Request | | | Award | | |
| Name | Hourly Rate | Hours Worked | Total Fee | Hourly Rate | Hours Worked | Total Fee |
| Wigdor | $600.00 | 157.7 | $94,620.00 | 375 | 104.1 | $39,055.43 |
| Gilly | $600.00 | 3.0 | $1,800.00 | 375 | 2.0 | $742.97 |
| Goodstadt | $550.00 | 0.6 | $330.00 | 275 | 0.4 | $108.97 |
| Graff | $310.00 | 149.7 | $46,407.00 | 175 | 98.9 | $17,301.28 |
| Varghese | $310.00 | 1.2 | $372.00 | 175 | 0.8 | $138.69 |
| Uh | $290.00 | 1.1 | $319.00 | 175 | 0.7 | $127.13 |
| Drian | $140.00 | 2.6 | $364.00 | 100 | 1.7 | $171.71 |
| Vallas | $140.00 | 11.6 | $1,624.00 | 100 | 7.7 | $766.08 |
| Scanlan | $140.00 | 6.0 | $840.00 | 100 | 4.0 | $396.25 |
| **TOTAL** | **N/A** | **333.5** | **$146,676.00** | **N/A** | **220.2** | **$58,808.52** |

| SUMMARY | | | | | | |
|---|---|---|---|---|---|---|
| | Request | | | Award | | |
| Name | Hourly Rate | Hours Worked | Total Fee | Hourly Rate | Hours Worked | Total Fee |
| 2006 | N/A | 8.7 | $3,990.00 | N/A | 5.7 | $1,936.67 |
| 2007 | N/A | 223.2 | $80,307.50 | N/A | 147.4 | $34,929.48 |
| 2008 | N/A | 333.5 | $146,676.00 | N/A | 220.2 | $58,808.52 |
| **Appeal** | **N/A** | **565.4** | **$230,973.50** | **N/A** | **373.4** | **$95,674.67** |
| **Dist. Ct.** | **N/A** | **50.7** | **$21,083.50** | **N/A** | **50.7** | **$14,130.00** |
| **TOTAL** | **N/A** | **616.1** | **$252,057.00** | **N/A** | **424.1** | **$109,804.67** |